■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JONATHAN W. HEIER, Appellant. [935 NYS2d 208]—

McCarthy, J.

Prior to attending a banquet with his wife, defendant took at least one prescribed medication and drank two large glasses of orange juice mixed with vodka. At the banquet, during which he drank at least eight or nine large mixed drinks, defendant was involved in a fight and was forced to leave. While being driven home, defendant hit his wife and pulled her hair. Upon arriving home, defendant scuffled with the friend who drove them home, then followed his wife into the house and began attacking her. He punched her, knocked her down and kicked her in the face with his steel-toed boots. She ran outside, where he punched and kicked her again, then she ran back inside and he continued beating her. The police showed up, at which point he stopped hitting her. When the police asked defendant to put his hands behind his back and go outside, he grabbed the freezer door handle and refused to let go. After the police knocked him down, he continued to struggle until they finally secured him with two pairs of handcuffs.

Defendant was charged by indictment with assault in the first degree, assault in the second degree and resisting arrest. A jury found him guilty of assault in the second degree and resisting

arrest. County Court sentenced him to an aggregate term of two years in prison and three years of postrelease supervision and ordered him to pay $3,084.50 in restitution. Defendant appeals.

The verdict was based upon legally sufficient evidence and was not against the weight of the evidence. For assault in the second degree, the People had to prove that defendant "recklessly cause[d] serious physical injury to another person by means of a . . . dangerous instrument" (Penal Law § 120.05 [4]). The parties stipulated that defendant's wife suffered serious physical injuries and that steel-toed boots are a dangerous instrument. The wife and babysitter testified that defendant repeatedly punched and kicked his wife, including kicking her in the mouth with his steel-toed boots, knocking out some of her teeth. The only issue was defendant's mental state at the time. Similarly, two State Troopers testified that, when told he was under arrest, defendant refused their orders to put his hands behind his back, grabbed the freezer, would not let go, and struggled with them after they knocked him to the ground. Again, the only element truly at issue on the count of resisting arrest was defendant's mental state. That count required intent, while assault in the second degree required recklessness.

A reckless mental state exists concerning a result or circumstance where a defendant "is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists" (Penal Law § 15.05 [3]). Disregard of the risk must constitute "a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto" (Penal Law § 15.05 [3]).

Defendant contends that he could not have acted intentionally or recklessly because he was so intoxicated, as a result of the alcohol and medication, that he does not recall any of the events surrounding the charges here. He presented a toxicologist who testified that a person who takes Cymbalta with alcohol can have delusions or amnesia because each of these substances enhance the effects of the other. Defendant testified that he took a Cymbalta, as well as a pain pill, before the banquet. His wife testified that defendant only took a pain pill that night, and that he had not taken Cymbalta for about six months. Five months before this incident, defendant stopped seeing the doctor who prescribed him Cymbalta. The toxicologist also acknowledged that the manufacturer of Cymbalta published studies saying that delusions were not caused by using that

medication with alcohol, although he dismissed those studies based on their source. The toxicologist had not performed his own studies, and testified only from the medical literature and based on anecdotal reports. Based on the testimony, the jury could have believed that defendant did not take Cymbalta that night, or that Cymbalta did not cause any reaction greater than if defendant had merely consumed the large amounts of alcohol attested to by numerous witnesses.

Defendant created a risk of harm to his wife when he punched and kicked her. Because he was unaware of the risk solely due to his voluntary intoxication, he acted recklessly when he caused her serious physical injury (*see* Penal Law § 15.05 [3]). Defendant could have intended to resist arrest even though he has no memory of the incident. The babysitter testified that defendant continued hitting his wife despite being asked to stop, but he stopped beating her when he saw the headlights of the police car and the babysitter mentioned that the police had arrived. The Troopers testified that defendant was combative and intoxicated, but he seemed to understand their directions. He informed them that he would not put his hands behind his back because they would not fit and his back hurt. He also stated that he would not let go of the freezer. After he was handcuffed, defendant—who was a dog breeder—asked the babysitter about taking care of his dogs. At the police station, defendant adequately responded to pedigree questions. From this evidence, the jury could reasonably have found that, despite his intoxication, defendant was aware that the officers were arresting him and he intentionally attempted to prevent them from effectuating his arrest. Giving deference to the jury's credibility determinations, we agree with its findings regarding defendant's mental state for each count (*see People v Young*, 74 AD3d 1471, 1472 [2010], *lv denied* 15 NY3d 811 [2010]). Accordingly, the verdict was not against the weight of the evidence.

County Court did not err in admitting photographs of the victim's injuries. Despite defendant having stipulated that his wife suffered serious physical injuries, the photographs were admissible to show defendant's intent to seriously injure her (*see People v Stevens*, 76 NY2d 833, 836 [1990]; *People v Manos*, 73 AD3d 1333, 1339 [2010], *lv denied* 15 NY3d 807 [2010]; *People v Mastropietro*, 232 AD2d 725, 726 [1996], *lv denied* 89 NY2d 1038 [1997]; *see also People v White*, 79 AD3d 1460, 1463 [2010], *lv denied* 17 NY3d 791, 803 [2011]). The court properly balanced the prejudice to defendant against the probative value, permitting the People to introduce less than half of the pictures they sought to admit. Thus, the court did not abuse its discre-

tion in this evidentiary ruling (*see People v Stevens*, 76 NY2d at 835; *People v Mastropietro*, 232 AD2d at 726).

Defendant did not preserve his arguments concerning the jury instructions, as he did not object to the aspects of the charge now at issue (*see People v Thomas*, 50 NY2d 467, 473 [1980]). Counsel was not ineffective for failing to object, as the charge accurately reflected the law and did not improperly shift the burden (*see People v Getch*, 50 NY2d 456, 465 [1980]).

Defendant's argument concerning restitution is unpreserved for review because he did not request a hearing or otherwise contest the amount awarded at sentencing (*see People v Planty*, 85 AD3d 1317, 1318 [2011], *lv denied* 17 NY3d 820 [2011]; *People v Dickson*, 55 AD3d 1137, 1138 [2008]).

Peters, J.P., Spain, Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.