■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS J. ROGERS, Appellant. [942 NYS2d 260]—

McCarthy, J. Appeal from a judgment of the County Court of Broome County (Cawley, J.), rendered January 5, 2011, upon a verdict convicting defendant of the crimes of manslaughter in the first degree, manslaughter in the second degree, aggravated criminal contempt, criminal contempt in the second degree (11 counts), assault in the third degree and attempted assault in the third degree (three counts).

The victim, who was romantically involved with defendant, was last seen with him at various bars. Two days later, she was found dead in her apartment. Defendant was charged with murder in the second degree, manslaughter in the first degree, aggravated criminal contempt, criminal contempt in the second degree (11 counts), assault in the third degree and attempted assault in the third degree (three counts). Following a trial, the jury acquitted him of depraved indifference murder under the first count, but convicted him of manslaughter in the second degree as a lesser included offense of that count and of all other counts contained in the indictment. County Court sentenced him to concurrent terms, the longest of which was 23 years in prison followed by five years of postrelease supervision. Defendant appeals.

County Court properly denied defendant's motions to suppress evidence. A search warrant that has been approved by a reviewing magistrate is cloaked with a presumption of validity (*see People v Castillo*, 80 NY2d 578, 585 [1992]). "[S]earch warrant applications should not be read in a hypertechnical manner as if they were entries in an essay contest[,] . . . [but] must be considered in the clear light of everyday experience and accorded all reasonable inferences" (*People v Hanlon*, 36 NY2d 549, 559 [1975]). The search warrant application contained sworn allegations of fact that, among other things, the victim died in a suspicious manner, the clothing she was last seen wearing was not located, defendant was the last person seen with her, an order of protection prohibited defendant from having any contact with the victim, he had previously injured her, and the injuries resulting in her death were consistent with her head striking a flat object. The application sought permission to search defendant's home for, among other things, the victim's clothing, a flat object consistent with the victim's head injury, the clothing that defendant was wearing on the night he was last seen with the victim, cellular phones that could be examined

for call logs, and blood, hair or fibers that could be evaluated for the presence of DNA. The court did not err in upholding the validity of the search warrant, as the information in the application was sufficient to support a reasonable belief that evidence of a crime—whether assault, murder, or criminal contempt for having contact with the victim in violation of the no-contact order of protection—may be found in defendant's home (*see People v Harris*, 83 AD3d 1220, 1222 [2011], *lv denied* 17 NY3d 817 [2011]).

County Court did not err in denying defendant's motion to sever counts of the indictment. Offenses are joinable if, among other things, they are based upon different criminal transactions but defined by the same or similar statutory provisions, or if proof of either offense would be material and admissible as evidence-in-chief at the trial of the other offense (*see* CPL 200.20 [2] [b], [c]). If the offenses were joined in an indictment solely because they were based on similar statutes, a court has discretion to order them separately tried "in the interest of justice and for good cause shown" (CPL 200.20 [3]). If the offenses were properly joined on any other basis, however, "the court lack[s] statutory authority to sever" (*People v Bongarzone*, 69 NY2d 892, 895 [1987]; *see People v Lane*, 56 NY2d 1, 7 [1982]; *see also* CPL 200.20 [3]). Here, the murder, manslaughter and aggravated criminal contempt counts were joinable because they were part of the same criminal transaction (*see* CPL 200.20 [2] [a]). The counts charging assault, attempted assault and criminal contempt were material and admissible to establish defendant's identity as the killer, his access to the victim despite the order of protection, and his intent to have contact with and injure the victim (*see People v Carter*, 74 AD3d 1375, 1378 [2010], *lv denied* 15 NY3d 772 [2010]; *People v Cherry*, 46 AD3d 1234, 1236 [2007], *lv denied* 10 NY3d 839 [2008]; *see also* CPL 200.20 [2] [b]). Hence, as the offenses were properly joined, the court lacked authority to grant defendant's severance motion (*see People v Bongarzone*, 69 NY2d at 895; *People v Cherry*, 46 AD3d at 1236).

County Court did not err in allowing the People to introduce hearsay statements under exceptions to the hearsay rule. The victim's statements that she was abused and threatened by defendant on a particular night in April 2009—four months prior to her death—were admissible as excited utterances. The victim's roommate testified that the victim was scared, crying, shaking and in pain in the early morning hours when the victim stated that she had been in an argument with defendant, he "was beating her," and "he was choking her so hard that she

couldn't yell for help." The roommate then helped the victim, who was sobbing and hysterical, call her sister. When the sister's boyfriend answered, the victim stated that defendant beat her up. The sister and her boyfriend arrived at the victim's apartment soon thereafter, where the boyfriend saw that she still appeared shaken and in pain, her lip was bloody, her eye was swollen and she was cradling her swollen hand. The boyfriend testified that the victim stated that defendant suddenly got on top of her, choked her and punched her in the face a couple of times. According to the victim, while this was happening, her hand got wedged between the bed and the windowsill but defendant kept pressing on her hand, knowing that she was in pain. When she finally pushed him off, defendant grabbed her high-heeled shoe, placed the pointed heel under her chin and "told her that I will or I could kill you." Based on this testimony, her statements were admissible as excited utterances because they were "made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication" (*People v Johnson*, 1 NY3d 302, 306 [2003]; *see People v Blackman*, 90 AD3d 1304, 1308-1309 [2011]).

Additionally, "[s]ilence, when one would naturally be expected to deny a statement made in his [or her] presence, is a tacit admission of the truth of the statement, rendering it admissible" (*People v Ross*, 68 AD2d 962, 963 [1979]). The victim's sister testified that, on another occasion when she saw the victim with an icepack on her head, she accused defendant of injuring the victim, but defendant simply left the apartment without saying anything. Another witness testified that on a different occasion he heard the victim tell defendant that, when she had two black eyes, she had to lie about being in a car accident to prevent others from knowing that she was in an abusive relationship; the witness did not hear defendant make any response. County Court properly determined that a sufficient foundation had been laid for this testimony, such that the jury could consider it to determine if defendant had adequately heard and understood the statements and would be expected to deny them but did not (*see People v Campney*, 94 NY2d 307, 311-313 [1999]). Thus, although hearsay, these statements were admissible under exceptions to the hearsay rule as tacit admissions or excited utterances.

The verdict finding defendant guilty of manslaughter in the first degree was not against the weight of the evidence.[1] Defendant acknowledges that the evidence was sufficient to support a

---

1. Defendant concedes that he failed to preserve his argument regarding the legal sufficiency on this count through his motion for a trial order of dis-

conviction for reckless manslaughter (manslaughter in the second degree), but attacks his conviction for intentional manslaughter (manslaughter in the first degree). In conducting a weight of the evidence review, this Court sits as a thirteenth juror and weighs "the evidence in light of the elements as charged to the other jurors" (*People v Danielson*, 9 NY3d 342, 349 [2007]). The People were required to prove that, with intent to cause serious physical injury to the victim, defendant caused her death (*see* Penal Law § 125.20 [1]). Intent may be inferred from a person's actions and the surrounding circumstances (*see People v Molina*, 79 AD3d 1371, 1376 [2010], *lv denied* 16 NY3d 861 [2011]). As charged to the jury, "[s]erious physical injury means impairment of a person's physical condition which creates a substantial risk of death or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (*accord* Penal Law § 10.00 [10]).

The evidence established that defendant was the last person seen with the victim, he was prohibited from contacting her pursuant to an order of protection, her vehicle was left in a parking garage, police could not locate the clothing the victim was wearing when she was last seen out with defendant, and she was found dead in her bed with her underwear put on improperly. During a previous argument, defendant had threatened that he would or could kill her. The victim was petite, while defendant was much larger and could bench press 200 pounds. The pathologist who conducted the autopsy testified that the victim had bruising above her left eye, a bruised right lung, scrapes on both knees and the top of one foot, a hemorrhage to the back of her brain and a tear between the hemispheres of the brain caused by blunt force trauma. The pathologist opined that her death was a homicide. Defendant's expert pathologist disagreed, opining that the victim fell two or three times due to intoxication and died an accidental death. A wall in defendant's home had an indentation at the level of the victim's head, permitting an inference that he slammed her head into the plaster wall—which would give somewhat—causing the internal brain trauma without obvious external injuries to her head. The pathologist testified that the victim would likely have been rendered dazed, stuporous or unconscious following these injuries, but that she could have survived if she had received medical attention and not been left alone. A wit-

missal. Nevertheless, we assess the sufficiency of the evidence as part of our weight of the evidence review (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]).

ness testified that defendant stated, when asked if he had killed the victim, that "they had an argument and he grabbed her and threw her into a wall and put her in bed and then that was it." Giving deference to the jury's credibility determinations (*see People v Romero*, 7 NY3d 633, 644-645 [2006]), the weight of the evidence supports findings that defendant intended to cause serious physical injury to the victim and that he caused her death by beating her, including slamming her into a wall.

Defendant did not object to County Court's jury charge regarding manslaughter in the first degree or the court's response to notes from the jury. He thus did not preserve his arguments on those issues (*see People v Kadarko*, 14 NY3d 426, 429-430 [2010]; *People v Starling*, 85 NY2d 509, 516 [1995]; *People v Heier*, 90 AD3d 1336, 1339 [2011]). We will address these arguments only to the extent that defendant alleges that the failure to preserve them constitutes ineffective assistance of counsel. The indictment sufficiently informed defendant of the charges against him. Although the count charging manslaughter in the first degree did not include the full statutory definition of serious physical injury, the court did not err or fundamentally change the prosecution's theory of the crime by including the full definition in its charge to the jury (*see People v Grega*, 72 NY2d 489, 495-496 [1988]; *People v Hilliard*, 49 AD3d 910, 913 [2008], *lv denied* 10 NY3d 959 [2008]).[2] Additionally, the court satisfied its duty when it recited the full contents of the jury's note on the record, even though the court did not read each word of the note aloud (*see* CPL 310.30; *People v O'Rama*, 78 NY2d 270, 277-278 [1991]; *see also People v Woodrow*, 89 AD3d 1158, 1160 [2011]). The court answered the questions that were asked by the jury and provided meaningful responses to the requests for further instruction (*see People v Santi*, 3 NY3d 234, 248-249 [2004]; *People v Arce*, 70 AD3d 1196, 1197 [2010]). Counsel otherwise provided effective assistance, including thoroughly cross-examining witnesses, calling defense witnesses including an expert pathologist, and asserting coherent defenses that the victim died accidentally and no evidence directly linked defendant to her death. Counsel also successfully moved to suppress defendant's pretrial statements and obtained an acquittal on the murder charge. Thus, defendant was provided with meaningful representation.

Defendant's remaining arguments have been considered and are without merit.

---

**2.** Serious physical injury was not seriously contested at trial and County Court's charge had no effect on the defense advanced at trial, which was that defendant had nothing to do with the victim's injuries. Accordingly, defendant was not prejudiced by the court charging the full statutory definition.

Spain, J.P., Malone Jr., Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.