*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 28, 2016                    106114
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

            v                              MEMORANDUM AND ORDER

JAMES WELLS, Also Known as HO,
    Also Known as EIGHTCHO,
                        Appellant.
_____

Calendar Date:  May 23, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Devine and Mulvey, JJ.

_____

        Matthew C. Hug, Albany, for appellant.

        Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

_____

Garry, J.

        Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered June 20, 2013 in Schenectady County, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (two counts), reckless endangerment in the first degree, unlawful imprisonment in the first degree, tampering with physical evidence and endangering the welfare of a child (three counts).

        In June 2011, defendant, then 31 years old, attended a party in the City of Schenectady, Schenectady County, together with several other adult males.  The majority of the large group of partygoers were teenagers.  Upon discovering that car keys

belonging to a vehicle rented by one of defendant's companions had disappeared, defendant and his companions interrupted the party and began to physically search the guests for the missing keys before allowing them to leave. Some of the guests objected. An altercation ensued, in which the 15-year-old victim was shot and killed.

Defendant was arrested and charged with the crimes of murder in the second degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree (two counts), reckless endangerment in the first degree, unlawful imprisonment in the first degree, tampering with physical evidence and endangering the welfare of a child (three counts). Defendant's pretrial omnibus motion sought, as pertinent here, to suppress identification testimony and to sever three counts of the indictment. County Court (Drago, J.) denied the motion to sever and, following a combined Wade/Huntley hearing, denied defendant's motion to suppress identification testimony. Following a jury trial, defendant was convicted as charged. Supreme Court (Coccoma, J.) denied defendant's CPL 330.30 motion to set aside the verdict and sentenced him, as a second felony offender, to an aggregate prison term of 30½ years to life, to be followed by five years of postrelease supervision. Defendant appeals.

Initially, we reject defendant's assertion that the charge of reckless endangerment in the first degree was duplicitous.[1] An indictment count is void for duplicity when it charges more than one offense (see CPL 200.30 [1]; People v Alonzo, 16 NY3d 267, 269 [2011]; People v Whitehead, 130 AD3d 1142, 1143 [2015], lv denied 26 NY3d 1043 [2015]). However, an indictment may charge multiple acts in a single count when the acts constitute a continuing offense and the charged crime, by its nature, may be

_____

[1] Contrary to the People's argument, defendant properly preserved this claim by raising it during the trial; he was not required to raise it in a pretrial motion (see CPL 470.05; compare People v Allen, 24 NY3d 441, 449-450 [2014]; People v Simmons, 115 AD3d 1018, 1018-1019 [2014]; People v Hayes, 104 AD3d 1050, 1053 [2013], lv denied 22 NY3d 1041 [2013]).

committed by multiple acts occurring over a period of time (see People v Keindl, 68 NY2d 410, 421-422 [1986]; People v Flanders, 111 AD3d 1263, 1265 [2013], affd 25 NY3d 997 [2015]; see also People v Hernandez, 235 AD2d 367, 368 [1997], lv denied 89 NY2d 1012 [1997]).

Relative to this charge, to establish that defendant was guilty of reckless endangerment in the first degree, the People were required to prove that, "under circumstances evincing a depraved indifference to human life, he recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 120.25). The indictment count charged only one act that could have been found to create a grave risk of death — the act of firing multiple gunshots at close range in a crowded stairwell. The other charged acts included interrupting the teenagers' party, bullying and threatening the young guests, accusing them of stealing or hiding the missing car keys, threatening to strip search them and forcing them to submit to physical searches, blocking them from leaving, assaulting some of them, fighting with guests on an interior staircase and finally pulling out one or more large-caliber handguns and, without warning, firing gunshots. These acts were part of a continuous course of conduct that led up to the shooting and, taken together with the act of firing the handgun, established the separate element of the crime requiring proof that defendant acted "under circumstances evincing a depraved indifference to human life" (Penal Law § 120.25; see People v Flanders, 111 AD3d at 1265). There was no uncertainty as to the conduct that underlay the jury's unanimous verdict (compare People v Estella, 107 AD3d 1029, 1031-1032 [2013], lvs denied 21 NY3d 1042, 1046 [2013]; People v Brammer, 189 AD2d 885, 885-886 [1993], lvs denied 81 NY2d 967, 977 [1993]), and we find that the count was not duplicitous.

County Court properly denied defendant's motion to sever counts 8, 10 and 11 of the indictment.[2] "Offenses are joinable

_____

[2] We reject the People's assertion that this claim was unpreserved, as defendant moved to sever the challenged counts in his pretrial omnibus motion (see CPL 470.05 [2]; compare People v

if, among other things, they are based upon different criminal transactions but defined by the same or similar statutory provisions, or if proof of either offense would be material and admissible as evidence-in-chief at the trial of the other offense" (People v Rogers, 94 AD3d 1246, 1248 [2012] [citation omitted], lv denied 19 NY3d 977 [2012]; see CPL 200.20 [2] [b], [c]; People v Raucci, 109 AD3d 109, 117 [2013], lv denied 22 NY3d 1158 [2014]).  Count 8 charged defendant with criminal possession of a weapon in the third degree based upon his alleged possession of firearms during the 15-day period immediately before the shooting at 811 Bridge Street in Schenectady, which was defendant's residence at the time and was located across the street from 730 Bridge Street, where the party took place. Counts 10 and 11 charged defendant with endangering the welfare of a child at 811 Bridge Street between December 2010 and March 2011 based upon defendant's dangerous activities in the presence of children who also resided there, including keeping drugs, loaded handguns and ammunition in a child's residence, using the residence as a base for drug-dealing operations and displaying one or more loaded guns to a child.

These counts were premised upon the same statutes that formed the basis of counts 4 and 9, which charged criminal possession of a weapon in the third degree and endangering the welfare of a child based upon defendant's conduct at the party (see Penal Law §§ 260.10 [1]; 265.02 [1]).  When offenses are joined solely because they are defined by similar statutory provisions, severance may be granted in the interest of justice upon a showing of good cause; however, a court has no discretion to do so if other grounds for joinder exist (see CPL 200.20 [3]; People v Rogers, 94 AD3d at 1248).  Here, County Court found another ground for joinder, in that proof of the charges that defendant sought to sever was "material and admissible as [evidence-in-chief] upon [the] trial of the [remaining charges]" (CPL 200.20 [2] [b]; see People v Bongarzone, 69 NY2d 892, 895 [1987]; People v Cherry, 46 AD3d 1234, 1236 [2007], lv denied 10

---

De Vivo, 282 AD2d 770, 771 [2001], lv denied 96 NY2d 900 [2001]; People v Merritt, 265 AD2d 733, 733 [1999], lv denied 94 NY2d 826 [1999]).

NY3d 839 [2008]).  The proof supporting counts 8, 10 and 11 of the indictment included evidence that defendant possessed several guns during the period shortly before the party – including several firearms that defendant allegedly stored at 811 Bridge Street and showed to a child who resided there, a .357 revolver that defendant allegedly possessed and displayed on the night before the shooting occurred, and a .44 revolver that he allegedly purchased on the day of the shooting.  This evidence was material and relevant to show defendant's possession of and access to the .44 revolver with which he allegedly shot the victim and the .357 revolver that he was also charged with possessing at the party (see People v Burnell, 89 AD3d 1118, 1121 [2011], lv denied 18 NY3d 922 [2012]; People v Lee, 80 AD3d 877, 880 [2011], lvs denied 16 NY3d 832, 833, 834 [2011]; People v Portee, 56 AD3d 947, 950 [2008], lv denied 12 NY3d 820 [2009]; compare People v Myers, 22 NY3d 1010, 1011 [2013]).  Thus, the court lacked statutory authority to sever counts 8, 10 and 11, and defendant's motion was properly denied (see CPL 200.20 [3]; People v Cherry, 46 AD3d at 1236).[3]

Defendant's pretrial motion to suppress identification testimony was properly denied.  "While the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure, it is the defendant who bears the ultimate burden of proving that the procedure was unduly suggestive" (People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990] [citation omitted]).  Here, the People met their initial burden during the three-day combined Wade/Huntley hearing by presenting the testimony of seven detectives who conducted photographic identification procedures in which 20 witnesses were asked to identify various persons of interest in the shooting, including defendant.  Witnesses were interviewed one at a time in various locations and were shown several photo arrays, each of which included a photograph of a

---

[3]  County Court further found that, even if joinder had been based solely upon CPL 200.20 (2) (c) so that a discretionary severance was available, defendant did not make the showing of good cause required by CPL 200.20 (3).

person of interest.  Two of the arrays included defendant's picture as one of a group of six color photographs of the same individuals, with defendant's photograph in different positions in each array.  The photographs depicted six informally-clothed males of apparently similar age and race, with similar features, hairstyles, expressions and facial hair.  The detectives testified that witnesses were asked if they recognized anyone and were instructed, among other things, to pay no attention to differences in the styles of the photographs or to features that could easily be changed.  This testimony describing the fairness of the identification procedure was adequate to shift the burden to defendant to establish that the photo arrays were unduly suggestive.

Defendant was required to show that "'some characteristic of one picture draws the viewer's attention in such a way as to indicate that the police have made a particular selection'" (People v Davis, 18 AD3d 1016, 1018 [2005], lv denied 5 NY3d 805 [2005], quoting People v Yousef, 8 AD3d 820, 821 [2004], lv denied 3 NY3d 743 [2004]; accord People v Lee, 30 AD3d 760, 762 [2006], lv denied 7 NY3d 850 [2006]).  The fact that the background of defendant's picture was lighter than the backgrounds of the others — which varied in color and darkness — did not "create a substantial likelihood that . . . defendant would be singled out for identification" (People v Chipp, 75 NY2d at 336; see People v Lawal, 73 AD3d 1287, 1288 [2010]; People v Brown, 169 AD2d 934, 935 [1991], lv denied 77 NY2d 958 [1991]; People v Emmons, 123 AD2d 475, 476 [1986], lv denied 69 NY2d 827 [1987]).  Contrary to defendant's claim, he was not the only subject in the arrays who was depicted from the chest up, and the fact that his shirt had a high collar and zipper did not call undue attention to him,  especially as his shirt was the same dark color as the T-shirts worn by all but one of the others (see People v Lee, 30 AD3d at 762; People v Sullivan, 300 AD2d 689, 690 [2002], lv denied 100 NY2d 587 [2003]).  In view of the overall strong similarity in the physical characteristics of the subjects depicted in the photographs and the instruction to witnesses to disregard features that could easily be changed, we find that defendant did not demonstrate a substantial likelihood that his picture would be singled out (see People v Lanier, 130 AD3d 1310, 1313 [2015], lv denied 26 NY3d 1009 [2015]; People v

Matthews, 101 AD3d 1363, 1364-1365 [2012], lvs denied 20 NY3d 1101, 1104 [2013]).

County Court did not abuse its discretion by denying defendant's request to call witnesses at the Wade/Huntley hearing. A defendant does not have an absolute right to call witnesses at such a hearing and may do so "only where the hearing evidence raises substantial issues as to the constitutionality of the identification procedure, where the People's evidence is notably incomplete, or where the defendant otherwise establishes a need for the witness's testimony" (People v Gant, 26 AD3d 516, 517 [2006] [internal quotation marks, ellipses and citations omitted], lv denied 7 NY3d 756 [2006]; see generally People v Chipp, 75 NY2d at 337). Here, there was nothing incomplete or constitutionally questionable in the detectives' testimony relative to the identification procedures. Further, defendant's stated reasons for calling witnesses — including possible communication among them — were wholly based on speculation (see People v White, 79 AD3d 1460, 1461 [2010], lvs denied 17 NY3d 791, 803 [2011]). There was no evidence that the procedures employed created opportunities for improper communication among the witnesses, or that any such communications occurred. The witnesses were interviewed one at a time and were instructed not to tell other witnesses whether they had identified anyone, and the use of two arrays with defendant's photograph in different positions minimized the possibility of any witness influencing another (compare People v Ocasio, 134 AD2d 293, 294 [1987]).

We reject defendant's challenge to Supreme Court's Molineux rulings, which permitted evidence of defendant's gang membership, prior possession of firearms and drugs, and threats against potential witnesses. Evidence of prior bad acts or uncharged crimes may be admitted when it falls within the list of recognized Molineux exceptions, completes the narrative of the charged crimes, provides necessary background information or is otherwise "relevant to some issue other than the defendant's criminal disposition" and its prejudicial effect is outweighed by its probative value (People v Allweiss, 48 NY2d 40, 47 [1979]; see People v Morris, 21 NY3d 588, 594 [2013]; People v Rivera, 124 AD3d 1070, 1073 [2015], lv denied 26 NY3d 971 [2015]). Here, as previously discussed, evidence of defendant's possession of

firearms before the shooting was directly admissible as proof of counts 8, 10 and 11 of the indictment, and was further admissible as to several of the remaining counts under Molineux in that it provided background information tending to prove defendant's means of access to the murder weapon, and his identity as the shooter.  Evidence of defendant's drug-dealing activities was likewise directly relevant to count 11, which charged endangering the welfare of a child, premised in part upon defendant's drug-dealing activities at 811 Bridge Street.  It further provided necessary background information explaining his relationship with several of the witnesses who testified at trial (see People v Johnson, 106 AD3d 1272, 1274 [2013], lvs denied 21 NY3d 1043, 1045, 1046 [2013]).

Testimony that defendant threatened potential witnesses and warned that he had caused a witness who "snitch[ed]" on him to be beaten up "was probative because it could be interpreted to reflect [his] consciousness of guilt" (People v Peele, 73 AD3d 1219, 1221 [2010], lvs denied 15 NY3d 893, 894 [2010]; see People v De Vivo, 282 AD2d 770, 772 [2001], lv denied 96 NY2d 900 [2001]).  Notably, Supreme Court minimized any unfair resulting prejudice by giving an appropriate limiting instruction.  As for evidence that defendant was a gang member, the People did not allege that the shooting itself was motivated by any gang-related purpose.  Nevertheless, evidence that defendant belonged to the Bloods street gang was material, relevant and connected to the crime because it explained the relationship among defendant and his adult companions — who were also Bloods — and the reasons for their cooperation in disrupting the party, fighting with the guests, fleeing together after the shooting, and later reconvening elsewhere (see People v Viera, 133 AD3d 622, 624 [2015], lv denied 26 NY3d 1151 [2016]).  Additionally, defendant's gang membership provided background information explaining the testimony of certain witnesses that defendant trusted them enough to seek their assistance or confide in them because he believed that they were also gang members.  Defendant's gang membership further helped to explain the initial reluctance of some of the People's witnesses to cooperate with police and to testify against him.  Accordingly, this evidence was probative of several relevant and material issues, and Supreme Court did not abuse its discretion in determining that

its prejudicial effect was outweighed by its probative value (see People v Williams, 28 AD3d 1005, 1008 [2006], lv denied 7 NY3d 819 [2006]).

Next, defendant claims that his convictions for murder in the second degree, reckless endangerment in the first degree and unlawful imprisonment in the first degree are not supported by legally sufficient evidence and are against the weight of the evidence, in that the proof did not establish that he shot the victim or exposed anyone to a risk of serious physical injury. Defendant's legal sufficiency claim is unpreserved for our review, as he did not raise these specific arguments at trial (see People v March, 96 AD3d 1101, 1102 [2012], lv denied 20 NY3d 1063 [2013]; People v Lozada, 35 AD3d 969, 969-970 [2006], lv denied 8 NY3d 947 [2007]). "Nevertheless, our weight of the evidence analysis necessarily involves an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt at trial" (People v Harden, 134 AD3d 1160, 1160 [2015] [internal quotation marks and citations omitted], lv denied ___ NY3d ___ [June 7, 2016]; see People v Danielson, 9 NY3d 342, 348-349 [2007]).

The credible testimony of the People's witnesses, taken together, established that defendant moved to Schenectady in 2010 with three fellow Bloods — the same individuals who later accompanied him to the party where the shooting occurred — to engage in the business of selling drugs on Bridge Street. Defendant resided in his paramour's apartment at 811 Bridge Street, where her children also resided, and brought two of the Bloods members who later attended the party from Brooklyn to stay there. The paramour testified that defendant kept several firearms in her bedroom; one of her children, then 13 years old, testified that defendant showed him ammunition and three firearms, one of which was a silver and black gun with a small barrel and a black handle — a description corresponding with the .357 revolver that defendant allegedly possessed during the shooting.

There was testimony from several witnesses who saw defendant with firearms during the days immediately before the shooting, including testimony that, on the night before the

party, defendant was seen at 730 Bridge Street — where a friend of his resided — with a .357 revolver. That night, defendant also made contact with a witness who testified that, on the day of the party, he helped defendant purchase a long-barreled Smith & Wesson .44 revolver. Defendant allegedly took this weapon to 811 Bridge Street, where he and the companions who later attended the party drank liquor and passed the newly purchased weapon around. Defendant loaded the weapon from an ammunition box that matched the description of a box that was later found in the paramour's apartment with defendant's fingerprint on it.

Defendant and his companions then headed across the street to the teenagers' party at 730 Bridge Street, where they continued to drink and acted as bouncers, frisking some of the guests and helping to collect cover charges. A witness testified that he and a friend found a set of car keys in the apartment during the party, determined that the keys belonged to a white vehicle parked nearby and left to seek advice on how to steal the car or its contents without being caught. As previously described, this car had been rented by one of defendant's companions, who soon discovered that the keys were missing. After making this discovery, defendant allegedly left the party briefly — long enough, according to the People, to cross the street, get one or more of the firearms he stored at 811 Bridge Street and change his clothing from the white T-shirt he had previously worn to a blue sweater that helped him conceal weapons on his person. One witness who described defendant's change of clothing said that, following his return, defendant had to keep adjusting his pants because they seemed to be sagging under a weight.

Several witnesses testified that, among other things, defendant ordered the guests to search for the keys, issued threats, instructed the guests that no one could leave until they were searched, and carried out some of the physically intrusive searches on or near a staircase leading down to the exterior door, while his companions and other individuals searched other guests. At some point, defendant and one of his companions allegedly stationed themselves at the foot of the interior stairwell to block the exterior door and prevent guests who had departed from coming back inside, while others carried out

searches near the top of the stairs.  When some guests refused to be searched, a brawl broke out among several of the guests and defendant's companions in the crowded stairwell.  During the ensuing confusion, a witness saw defendant's companion hand a "big" gun with a long barrel to defendant, who was then standing near the foot of the stairs.  The companion then moved up the stairs, fighting with a guest, while defendant remained below; meanwhile, the victim, who had joined the struggle, descended the stairs.  Defendant and the victim began to fight, and several witnesses saw defendant draw two revolvers and fire at least one shot at the victim.  Numerous witnesses heard one shot, followed by several shots in quick succession.  The victim's body was found at the foot of the stairs, partially blocking the exterior door.  Forensic evidence established that he was shot four times with a .44 revolver while he was on the stairway by someone standing at or near the bottom of the stairs.

Witnesses outside saw defendant leave immediately after the shooting, closely followed by his companions.  One witness said that defendant was holding two large guns as he left, which he placed in the waist of his pants.  Defendant's paramour testified that she heard several gunshots from her apartment at 811 Bridge Street.  Shortly thereafter, defendant returned alone through a back door, pulled a .44 revolver from his pants, opened its cylinder and told her that he had shot the victim four times. She testified that she saw ammunition in two of the weapon's six chambers, while the remainder appeared dark and empty.  Defendant then took a bag of belongings and fled, leaving behind items later found by police that included drug paraphernalia, clothing, and the previously-mentioned box of ammunition bearing his fingerprint.  He was arrested a month later in Brooklyn.  Sixteen months after the shooting, rusted .357 and .44 revolvers were found among debris in a nearby backyard, wrapped in a blue sweater that matched the description of the one that defendant had changed into just before the shooting.  The .44 revolver was a long-barreled Smith & Wesson that contained four spent casings and two live rounds of the same type of ammunition that killed the victim and was stored in the ammunition box.  The .357 revolver was loaded but had not been fired.

Two inmates who encountered defendant in jail after his

arrest testified that he made admissions related to the shooting. One of these inmates said that defendant admitted that he had two guns but fired only one, and that he shot the victim several times, using a revolver. Defendant allegedly told another inmate that he "finished" the victim and placed a box over his head afterward — a box that several witnesses remembered seeing on or near the victim immediately after the incident.

Defendant took the stand and offered an account of the evening in which he admitted, among other things, that he belonged to the Bloods, moved to Schenectady to sell drugs, possessed the .44 revolver that was later recovered by police, took the .357 revolver to the party and participated in searching the guests and fighting with them. However, he denied that he had shot the victim and suggested that one of his companions might have done so. Defendant further presented several witnesses whose testimony tended to support his version of events or call into question the credibility of the accounts offered by the People's witnesses. Had the jury credited this testimony, a different verdict would not have been unreasonable (see People v Romero, 7 NY3d 633, 643 [2006]). As defendant argues, there were contradictions and inconsistencies in the testimony of the People's witnesses; many of these witnesses initially declined to cooperate with law enforcement, made early statements that were inconsistent with their later trial testimony, or testified that they were allowed to plead to reduced charges for unrelated offenses in exchange for their testimony against defendant. However, "these issues were fully explored during cross-examination and, in the final analysis, posed credibility questions for the jury to resolve" (People v Malak, 117 AD3d 1170, 1174 [2014], lv denied 24 NY3d 1086 [2014]; accord People v Rivera, 124 AD3d at 1074; see People v Desmond, 118 AD3d 1131, 1133 [2014], lv denied 24 NY3d 1002 [2014]). Deferring to these credibility determinations and viewing the evidence in a neutral light (see People v Bleakley, 69 NY2d 490, 495 [1987]), we cannot say that the jury failed to accord the evidence its proper weight.

We reject defendant's assertion that he was deprived of a fair trial by the admission of prejudicial and irrelevant testimony from the victim's mother and his basketball coach on

the first day of the trial.  Supreme Court did not err in admitting this testimony to the limited extent that it served to explain how the victim – who had been at a basketball tournament in New York City earlier that day – came to be present at the party and to describe his demeanor and physical condition just before the event (see People v White, 79 AD3d at 1463).  Both witnesses strayed beyond this purpose by offering emotional comments and remarks on such irrelevant subjects as the victim's personality; defendant objected to this testimony, and the court promptly sustained the objections and attempted to minimize the prejudicial impact by instructing the jury to disregard some of the remarks (see id.).  In view of the brevity of the challenged testimony and the overwhelming other evidence of defendant's guilt presented during the seven-week trial, we find that any error was harmless, as there is no "significant probability" that defendant would have been acquitted if the testimony had not been admitted (People v Crimmins, 36 NY2d 230, 242 [1975]; accord People v Smith, 217 AD2d 221, 238-239 [1995], lv denied 87 NY2d 977 [1996]).

Finally, in view of the heinous nature of defendant's crimes, his lack of remorse and his extensive prior history of crimes involving firearms and violence, we find no abuse of discretion or extraordinary circumstances that warrant modification of his sentence in the interest of justice (see People v Martin, 136 AD3d 1218, 1220 [2016]; People v Rollins, 51 AD3d 1279, 1282-1283 [2008], lvs denied 11 NY3d 922, 930 [2009]).

Egan Jr., Lynch, Devine and Mulvey, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court