People v Hajratalli (2021 NY Slip Op 07036)





People v Hajratalli


2021 NY Slip Op 07036


Decided on December 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 16, 2021

112398
[*1]The People of the State of New York, Respondent,
v
Ramiz T. Hajratalli, Appellant.

Calendar Date:October 13, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Luibrand Law Firm, PLLC, Latham (Kevin A. Luibrand of counsel), for appellant.
G. Scott Walling, Special Prosecutor, Slingerlands, for respondent.



Lynch, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered May 25, 2018, upon a verdict convicting defendant of the crimes of burglary in the second degree (two counts) and criminal mischief in the fourth degree (two counts).
Defendant was charged by indictment with burglary in the second degree (two counts) and criminal mischief in the fourth degree (two counts) in connection with two home invasions in the City of Saratoga Springs, Saratoga County, that occurred in July and August 2017.[FN1] County Court denied defendant's pretrial motion to sever the counts related to each incident and a jury trial thereafter ensued. Defendant was ultimately convicted as charged and sentenced to consecutive prison terms of 15 years, with five years of postrelease supervision, on each burglary conviction and to lesser concurrent prison terms on the criminal mischief convictions. Defendant appeals.
Defendant contends that the verdict related to the July 2017 home invasion is legally insufficient and against the weight of the evidence because the People did not establish his identity as the perpetrator. Defendant's legal sufficiency argument is unpreserved, as his motion for a trial order of dismissal at the close of the People's proof focused solely on the mens rea component of burglary and not on the issue of identity (see People v White-Span, 182 AD3d 909, 910 [2020], lv denied 35 NY3d 1071 [2020]; People v Sutton, 174 AD3d 1052, 1052 [2019], lv denied 34 NY3d 954 [2019]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt. In conducting such a review, where an acquittal would not have been unreasonable, we view the evidence in a neutral light and, while giving deference to the jury's credibility determinations, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v White-Span, 182 AD3d at 910 [internal quotation marks and citations omitted]; see People v Sindoni, 178 AD3d 1128, 1131 [2019]). As relevant here, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . [i]ntentionally damages property of another person" (Penal Law § 145.00 [1]).
As to the first home invasion, the People elicited testimony that, on the evening of July 29, 2017, a female resident of Saratoga Springs (hereinafter victim No. 1) went to a bar on Caroline Street with her roommate and her roommate's boyfriend. Victim No. 1 consumed seven alcoholic beverages [*2]and left the bar around 12:45 a.m. Upon returning to her Caroline Street apartment, victim No. 1 had a conversation with her roommate and went to sleep. She confirmed that, before getting into bed, she locked both the front door to the apartment and her bedroom door. Sometime later, she awoke to the click of her light switch and her overhead light coming on. She then saw a man standing in the doorway of her bedroom, explaining that the light caused the man to have a "white aura" that obscured his features. However, she was able to see that he had a larger build and dark hair that was "longer at the top" and not a "buzz cut." Because she was aware that her roommate's boyfriend was sleeping over that night, victim No. 1 assumed that the individual standing in her doorway was the boyfriend. She yelled for him to "[g]et the f[***] out" and the individual turned the light off and left. Victim No. 1 then went back to sleep and, when she awoke around 7:00 a.m., she noticed that the inside doorknob to her bedroom door "was on [the] floor and the screw was right next to it." Victim No. 1 texted her roommate about whether the boyfriend had entered her room that evening and the roommate confirmed that he had not.[FN2] Victim No. 1 testified that, as she was walking in an alley next to her residence the next day, she noticed the outside doorknob to her bedroom in her neighbor's bushes. Victim No. 1 then contacted her landlord, who met her at the apartment and noticed pry marks on the front door frame, as well as "paint chips" and "wood chips" on the floor outside of her bedroom. When victim No. 1 reported the incident to police, she gave them a statement describing the individual whom she saw standing in her doorway as a white male.[FN3]
John Guzek, an investigator with the City of Saratoga Springs Police Department, proceeded to victim No. 1's apartment after the incident and observed pry marks on her front door, "just below the . . . handle." As to the physical evidence pertaining to victim No. 1's bedroom, Guzek noticed "quite a few paint chips on the floor," the "door jamb had approximately five inches of paint rubbed off," and both door handles were missing and two mounting screws were gone. Police located a partial fingerprint on the outer doorknob that victim No. 1 found in the neighbor's bushes, but were unable to identify any matches at that time.
As to the August 2017 home invasion, the People elicited testimony from a male resident of Saratoga Springs (hereinafter victim No. 2), who explained that defendant entered his residence without authorization on the evening of August 11, 2017. In particular, victim No. 2 testified that he went to bed around 10:30 p.m. after locking his back door. He was awakened after midnight and observed an individual standing in the bedroom doorway holding a lit cigarette lighter and looking into the bedroom, identifying this individual at trial as defendant. Victim No. 2 testified that he asked defendant who [*3]he was but defendant turned away and ran, prompting victim No. 2 to grab his pistol and chase defendant. Defendant eventually stopped running and, according to victim No. 2, stated that he was a friend of victim No. 2's wife, whom he referred to as "Kathryn." Victim No. 2 testified that he became immediately suspicious because his wife, who goes by the name "Kathy," does not use the name "Kathryn."[FN4] Victim No. 2 then pushed defendant to the ground and knelt on his hands until police officers arrived. Upon defendant's arrest, he was found in possession of a cigarette lighter, a pack of cigarettes and lotion.
Victim No. 2's daughter, who was not home that evening, testified that she walked to and from a local bar on August 4, 2017 and again walked to a local bar on August 5, while getting a ride home on that date. Both times, she used a combination box to access a key to the back door of the house and explained that she always left the combination set to open. Her walking route to the bars apparently took her by defendant's apartment.
Following defendant's arrest, defendant's fingerprints were taken and three fingerprint examiners with the Division of Criminal Justice Services compared them to the partial fingerprint located on victim No. 1's doorknob. All three examiners confirmed that the fingerprint on the doorknob matched the fingerprint on defendant's left index finger.
Defendant testified on his own behalf, explaining that, at the time of the alleged crimes, he resided at an apartment on Caroline Street in Saratoga Springs. He explained that he sometimes smoked cigarettes on the front steps of his apartment building and would go for walks on Caroline Street, along a route that took him past victim No. 1's building. However, he denied going out on the street on July 29, 2017 and was adamant that he never entered victim No. 1's apartment. As to the incident in August 2017, defendant testified that he went for a walk on the evening of August 10, 2017, taking his "normal loop" down the street where victim No. 2's residence was located. According to defendant, as he walked down that street, he heard a door slam and someone yell, "Stop. I have a gun." Although defendant ran, he confirmed that victim No. 2 eventually subdued him by punching him in the head while saying, "You were in my house" — an assertion that defendant denied.
On this record, an acquittal on the counts related to the July 2017 incident would not have been unreasonable given victim No. 1's statement to police that the individual she saw standing in her doorway was a white male and defendant's testimony that he never entered her apartment. Nevertheless, victim No. 1 was extensively cross-examined about her initial description of the perpetrator and, when viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we are satisfied that the People proved each element of the crimes related to the July 2017 incident beyond a reasonable [*4]doubt. As to the burglary charge, defendant's identity as the person who entered victim No. 1's apartment was established by the testimony of three fingerprint examiners who each independently and successively concluded that his fingerprint matched the latent fingerprint found on the doorknob to her bedroom. Victim No. 1's testimony established that the location burglarized was a dwelling and that defendant did not have permission to enter (see People v Saylor, 173 AD3d 1489, 1491-1492 [2019]; People v Thomas, 112 AD3d 999, 1000 [2013], lvs denied 22 NY3d 1139, 1141 [2014]), and defendant's intent to commit a crime within the apartment can be inferred from the evidence of forced entry, the disassembly of the bedroom doorknob and the discarding of the outer doorknob in the neighbor's bushes (see People v Womack, 143 AD3d 1171, 1171 [2016], lv denied 28 NY3d 1151 [2017]). As for the two counts of criminal mischief, the evidence of the pry marks on the front door of victim No. 1's apartment and disassembly of her bedroom doorknob readily established that defendant intentionally damaged two pieces of property that were not his own (see Penal Law § 145.00 [1]).
Defendant additionally contends that County Court erred in denying his motion to sever the counts in the indictment related to each incident. "Offenses are joinable if, among other things, they are based upon different criminal transactions but defined by the same or similar statutory provisions, or if proof of either offense would be material and admissible as evidence-in-chief at the trial of the other offense" (People v Rogers, 94 AD3d 1246, 1248 [2012], lv denied 19 NY3d 977 [2012]; see CPL 200.20 [2] [b], [c]). "If the offenses were joined in an indictment solely because they were based on similar statutes, a court has discretion to order them separately tried 'in the interest of justice and for good cause shown'" (People v Rogers, 94 AD3d at 1248, quoting CPL 200.20 [3]). However, if "the offenses were properly joined on any other basis, . . . 'the court lack[s] statutory authority to sever'" (People v Rogers, 94 AD3d at 1248, quoting People v Bongarzone, 69 NY2d 892, 895 [1987]; see People v Lane, 56 NY2d 1, 7 [1982]; see also CPL 200.20 [3]).
In his affidavit in support of the motion to sever, defendant argued that there was good cause to grant severance in the interest of justice under CPL 200.20 (3) (b), which allows discretionary severance upon "[a] convincing showing that [the] defendant has both important testimony to give concerning one count and a genuine need to refrain from testifying on the other, which satisfies the court that the risk of prejudice is substantial." He averred that, to defend against the August 2017 incident, he would need to take the stand to explain the reason for his presence near victim No. 2's residence on that date. However, with respect to the July 2017 incident, defendant posited that he had a genuine need to refrain from testifying because [*5]no eyewitness could conclusively place him at victim No. 1's residence. In denying defendant's motion, County Court found that joinder was permissible under either CPL 200.20 (2) (b) or (c) and defendant did not establish good cause for severance.
In these circumstances, County Court did not err in denying defendant's request for discretionary severance. Regardless of whether defendant satisfied his burden under CPL 200.20 (3) (b), discretionary severance was not available in the first instance because, as County Court properly found, joinder was permissible under CPL 200.20 (2) (b) (see People v Bongarzone, 69 NY2d at 895; People v Wells, 141 AD3d 1013, 1015 [2016], lvs denied 28 NY3d 1183, 1189 [2017]). Indeed, proof related to the August 2017 incident was material and admissible to establish defendant's identity as to the July 2017 incident insofar as defendant's fingerprint on victim No. 1's doorknob was only ascertainable after his arrest following the second incident (see People v Wells, 141 AD3d at 1015; People v Cherry, 46 AD3d 1234, 1236 [2007], lv denied 10 NY3d 839 [2008]).
Nor did County Court abuse its discretion in denying defendant's motion for a mistrial based upon testimony from a witness that exceeded the scope of the People's Molineux proffer. "The decision to grant or deny a motion for a mistrial is within the trial court's discretion and its decision will not be disturbed unless it amounts to an abuse of discretion" (People v Hilts, 187 AD3d 1408, 1415 [2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 973 [2020]; see People v Turcotte, 124 AD3d 1082, 1083-1084 [2015], lv denied 25 NY3d 1078 [2015]). Prior to trial, the People made a Molineux proffer seeking to admit, among other things, evidence of a prior incident in which defendant allegedly engaged in nonconsensual contact with a female resident of Saratoga Springs (hereinafter the Molineux witness). In particular, the People sought to present evidence that, in 2014, the Molineux witness, who had slept at a friend's house where defendant was present, awoke to defendant rubbing her leg and, when she confronted him, he stated, "I liked you better when you were asleep." County Court ruled that such evidence was admissible to establish defendant's intent and motive as to the underlying indictment, specifically "that defendant's illegal entry in the two residences was intended for having physical/intimate/sexual contact with young women [whom] he targeted in the early morning hours walking home from bars."
When the Molineux witness testified at trial about the 2014 incident, she revealed, unprompted, that in addition to rubbing her leg, defendant also slowly moved his hand up "towards [her] private area." In response to such testimony, the prosecutor asked her to clarify what she meant by private area and she responded, "My genitals." Defense counsel objected and County Court overruled the objection. The prosecutor then asked, "Can you be[*6]&mdash," and before finishing the question, the Molineux witness stated, "My vagina." A few minutes later, the court paused the trial and, outside of the jury's presence, informed the parties that it had reread the People's Molineux proffer and noticed that the People omitted therefrom any mention that defendant had been reaching toward this witness's genitals. Defense counsel moved for a mistrial, but County Court denied the motion, instead striking the entirety of the Molineux witness's testimony and instructing the jury to disregard it.
We cannot conclude that County Court abused its discretion in declining to declare a mistrial. "Jurors are presumed to have followed a trial judge's limiting instructions" (People v Morris, 21 NY3d 588, 598 [2013]), and we are satisfied that the prejudice to defendant flowing from the challenged testimony was sufficiently dissipated by County Court's decision to strike the testimony and its instruction to the jury to disregard it (see People v Turcotte, 124 AD3d at 1084; People v Redmon, 81 AD3d 752, 752 [2011], lv denied 16 NY3d 862 [2011]; compare People v Lentini, 163 AD3d 1052, 1055 [2018]; People v Hendricks, 205 AD2d 333, 333-334 [1994], lv denied 84 NY2d 826 [1994]). Accordingly, although the testimony was improper, we are satisfied that County Court's remedy appropriately cured the prejudice so as to afford defendant a fair trial.
Defendant's related claim of prosecutorial misconduct is unavailing. The record does not show a pervasive and egregious pattern of misconduct by the prosecutor, and the prosecutor's
direct questions eliciting testimony that exceeded the bounds of the Molineux proffer, although improper, did not deprive defendant of a fair trial (see People v Bonaparte, 196 AD3d 866, 869 [2021], lv denied 37 NY3d 1025 [2021]; People v Newkirk, 75 AD3d 853, 857 [2010], lv denied 16 NY3d 834 [2011]).
To the extent sufficiently preserved, we are similarly unpersuaded by defendant's contention that the testimony of the three fingerprint examiners should have been precluded as cumulative. Although the testimony from the three fingerprint examiners was repetitive in certain respects, we agree with the People that the fingerprint evidence was highly relevant and that each examiner played a successive role in the analysis. Accordingly, we cannot conclude that the testimony of the three examiners was unduly cumulative or that County Court abused its discretion in admitting such testimony (see People v Lopez, 288 AD2d 118, 119 [2001], affd 99 NY2d 76 [2002]; People v Swinson, 176 AD2d 613, 613-614 [1991], lv denied 79 NY2d 864 [1992]).
Finally, defendant contends that the sentence is harsh and excessive. "The determination of an appropriate sentence requires the exercise of discretion after due consideration given to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of the penal sanction. A sentence [that] falls within the statutory [*7]parameters will not be disturbed on appeal absent evidence of a clear abuse of discretion or the existence of extraordinary circumstances" (People v Pigford, 148 AD3d 1299, 1302 [2017] [internal quotation marks and citations omitted], lv denied 29 NY3d 1085 [2017]; see CPL 470.15 [6] [b]; People v Delgado, 80 NY2d 780, 783 [1992]).
As burglary in the second degree is a class C violent felony, defendant's sentencing exposure was a determinate prison term from 3½ to 15 years on each conviction (see Penal Law §§ 70.02 [1] [b]; [3] [b]; 140.25). County Court imposed the maximum possible sentence on each conviction, to run consecutively, amounting to an aggregate prison term of 30 years. Although consecutive sentences were statutorily authorized (see Penal Law § 70.25 [2]; People v Hall, 188 AD3d 1416, 1417 [2020], lv denied 36 NY3d 1051 [2021]), defendant has no prior criminal history and his conduct, while serious, did not result in any physical touching or harm. These factors, coupled with the other mitigating circumstances reflected in the presentence investigation report, compel our conclusion that the sentence imposed is harsh and excessive. Accordingly, we modify the sentence in the interest of justice by directing that the prison terms for both burglary convictions shall run concurrently (see People v Brown, 192 AD3d 1260, 1262 [2021]; People v Williams, 150 AD3d 1315, 1320 [2017], lv denied 30 NY3d 984 [2017]). We have considered defendant's remaining contentions and find them to be either unavailing or insufficient to establish reversible error.
Clark, Pritzker and Colangelo, JJ., concur.
Egan Jr., J.P. (concurring in part and dissenting in part).
I respectfully disagree with the majority's decision insofar as it finds the sentence to be harsh and excessive. Defendant was convicted of breaking and entering into two separate residences during the nighttime hours while their occupants slept inside. Although County Court imposed the maximum sentence, it was within the statutory parameters (see Penal Law §§ 70.02 [3] [b]; 70.25 [2]; 140.25). In my view, the record does not reveal any abuse of discretion by County Court or extraordinary circumstances that would warrant our modifying the sentence in the interest of justice (see People v Robles, 115 AD3d 30, 37 [2014], lv denied 22 NY3d 1202 [2014]; People v Remo, 98 AD2d 843, 845 [1983]).
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by directing that defendant's sentences for burglary in the second degree under counts 1 and 4 of the indictment shall run concurrently to each other, and, as so modified, affirmed.



Footnotes

Footnote 1: One of the burglary counts and both of the criminal mischief counts related to the July 2017 incident.

Footnote 2: The roommate and her boyfriend also testified to that effect, and the roommate described her boyfriend as "petite" with a blonde buzz cut.

Footnote 3: Defendant is from Guyana and is not Caucasian.

Footnote 4: Victim No. 2's wife later testified that, after the incident, she noticed that her wallet had been unsnapped and, although her "[driver's] license was . . . where it belonged," it was "pulled out, as if somebody took it out." She confirmed that the license had her full name, "Kathryn," on it.