■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN D. HODGES, Appellant. [888 NYS2d 224]—

Garry, J. Appeal from a judgment of the County Court of Warren County (Hall, Jr., J.), rendered July 18, 2007, upon a verdict convicting defendant of the crimes of arson in the second degree, criminal mischief in the second degree and reckless endangerment in the first degree (five counts).

In January 2006, defendant, then age 26, began a sexual relationship with a 16-year-old girl. In June 2006, as she later testified, she ended the relationship. The girl's parents then sent her to spend the summer with relatives in the Town of Horicon, Warren County. The relatives owned a store and resided in an apartment above. Defendant repeatedly asked the girl to return home, reacted angrily when she refused to do so, and argued with her father about having sent her away.

Late in July 2006, defendant made an anonymous e-mail complaint to the Department of Agriculture and Markets alleging that unsanitary practices at the store had made him sick. He followed up the complaint with a telephone call to the

Department in his own name. That night, he drove to the store and, by his own admission, started a fire under a deck at the rear of the building. After he drove away, the fire consumed the building as well as two vehicles parked nearby; the occupants escaped.

Defendant initially claimed that he was at home in bed when the fire started. Confronted with cellular telephone records contradicting this claim, he offered several alternate explanations before acknowledging that he had started the fire. He was indicted on one count each of arson in the second degree, arson in the fourth degree, and criminal mischief in the second degree, as well as five counts of reckless endangerment in the first degree. A jury convicted him of all of the charges except for arson in the fourth degree. He was sentenced to prison terms of 22 years for the arson conviction and $2^1/_3$ to 7 years for each of the six remaining convictions, with the latter six terms to run concurrently with the arson conviction, but consecutively to a sentence of $1^1/_3$ to 4 years that he had received for an earlier conviction in Warren County for rape in the third degree arising from his relationship with the girl. He was ordered to pay restitution and to serve five years of postrelease supervision. After a formal restitution hearing, County Court ordered defendant to pay $803,272.74 as restitution with a 5% surcharge of $40,163.64. The court also issued two orders of protection. Defendant now appeals.

Initially, defendant contends that his arson and criminal mischief convictions are not supported by legally sufficient evidence and are against the weight of the evidence, in that proof that he intended to damage the store was lacking. To prove arson in the second degree, the People were required to show that defendant "intentionally damage[d] a building by starting a fire" when there was another person in the building and defendant knew or should have known of the person's presence (*People v Cushner*, 46 AD3d 1121, 1122 [2007], *lv denied* 10 NY3d 809 [2008]; *see* Penal Law § 150.15). As to criminal mischief in the second degree, the People were required to prove that "with intent to damage property of another person," and without the right to do so, defendant damaged another person's property worth more than $1,500 (Penal Law § 145.10). Contrary to defendant's claim, the proof of his intent was legally sufficient to support both convictions. Intent may be inferred from the act itself, from a defendant's conduct and statements, and from the surrounding circumstances (*see People v Bracey*, 41 NY2d 296, 301 [1977]; *People v Tunstall*, 278 AD2d 585, 586-587 [2000], *lv denied* 96 NY2d 788 [2001]; *People v Labar*, 278 AD2d 522, 523 [2000]).

On the night of the fire, defendant drove his mother's car to the store and parked it on a side street where it was unlikely to be seen. He testified that he started the fire with a cigarette, built it up with leaves and cardboard, and fanned the flames. He allegedly left the fire to throw sticks at two different windows in an unsuccessful attempt to attract the attention of the girl inside and then returned to the fire, where the smoke had grown so heavy that he could not see his cigarette. Defendant testified that he stepped on the area where he thought the cigarette might be and then left the scene. Viewed in the light most favorable to the People, this evidence provided a " 'valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion' " that defendant intended to damage the building (*People v Venkatesan*, 295 AD2d 635, 636 [2002], *lv denied* 99 NY2d 565 [2002], *cert denied* 549 US 854 [2006], quoting *People v Williams*, 84 NY2d 925, 926 [1994]).

As a different conclusion would not have been unreasonable, "we must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Krug*, 282 AD2d 874, 878 [2001], *lv denied* 98 NY2d 652 [2002] [internal quotation marks and citations omitted]). Defendant testified that he did not intend to damage the building, since the girl he loved was inside. He claimed that he merely intended to attract the attention of the occupants and to point out that a fire hazard existed under the deck. The People argue that defendant intended to damage the building in order to compel the girl to return home. The jury's credibility assessments are to be given "[g]reat deference" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), and it was free to accept some parts of defendant's testimony and reject others (*see People v Alteri*, 49 AD3d 918, 920 [2008]). The girl testified that defendant had persistently pursued her, followed her, and attempted to persuade her to return home. Based on this evidence, as well as defendant's complaint about the store to the Department on the same day as the fire, the false accounts he initially gave to police, his knowledge and experience as a volunteer firefighter, and his admission that he started the fire and even fanned the flames in an area that he considered to be a fire hazard and then left the scene without ascertaining that the fire was out or that the building's occupants knew about it, we find that, "[w]hen viewed in a neutral light," the weight of the evidence supports both convictions (*People v Labar*, 278 AD2d at 523).

Defendant next contends that his convictions for arson in the second degree and criminal mischief in the second degree are repugnant to his convictions for reckless endangerment in the

first degree in that the elements of intent for the first two crimes and recklessness for the others are mutually exclusive. In determining whether verdicts are repugnant, a court "must review the essential elements of each count as charged to the jury to determine whether the defendant was 'convicted of an offense containing an essential element that the jury has found the defendant did not commit' " (*People v Faccio*, 33 AD3d 1041, 1043 [2006], *lv denied* 8 NY3d 845 [2007], quoting *People v Trappier*, 87 NY2d 55, 58 [1995]). Reckless endangerment requires a showing that "under circumstances evincing a depraved indifference to human life, [a defendant] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25; *see People v Anderson*, 38 AD3d 1061, 1062 [2007], *lv denied* 8 NY3d 981 [2007]). The crimes of arson in the second degree and criminal mischief in the second degree require an intent to damage property (*see* Penal Law §§ 150.15, 145.10). There is "nothing inconsistent about one acting with an intent to cause property damage while at the same time evidencing a conscious disregard for the risk of death created by those same actions" (*People v McGrath*, 195 AD2d 831, 833 [1993], *lv denied* 82 NY2d 851 [1993]). The verdicts were not repugnant.

Defendant asserts that County Court improperly denied his motions for a continuance and to set aside the verdict based on the People's alleged failure to turn over written statements of an expert witness who testified about cigarette combustion for the prosecution. The People must "disclose any recorded statement *in its possession or control* made by a person the prosecutor intends to call to the stand, which relates to the subject matter of the witness' testimony" (*People v Santorelli*, 95 NY2d 412, 422 [2000] [emphasis added]; *see* CPL 240.45; *People v Rosario*, 9 NY2d 286, 289 [1961], *cert denied* 368 US 866 [1961]). Defendant contends that two articles on cigarette combustion published by the expert during the 1990s and the expert's notes on which the articles were based were subject to this requirement. This argument fails as he has not shown that these documents were in the People's possession or control.

"[The *Rosario*] obligation simply does not arise where, as here, the People lack control over the items in question and the entity in possession of them is not a law enforcement agency" (*People v Washington*, 86 NY2d 189, 193 [1995]). Thus, the obligation does not include a medical examiner's autopsy notes (*see id.* at 192), an accident report filed with the Department of Motor Vehicles (*see People v Flynn*, 79 NY2d 879, 882 [1992]), or a personal account of a sexual attack written by the victim (*see People v Reedy*, 70 NY2d 826, 827 [1987]). Likewise, it does not

extend to the notes and articles here, which were written by the independent expert witness long before the events at issue took place, at a time when he was "working according to [his] own methods without being subjected to the control of the [People]" (*People v Gillis*, 220 AD2d 802, 805 [1995], *lv denied* 87 NY2d 921 [1996]). Further, the expert's published articles were "just as accessible to the defendant as they were to the prosecutor" (*People v Rodriguez*, 262 AD2d 428, 429 [1999]; *see People v Kelly*, 88 NY2d 248, 251). Defendant identifies no authority supporting his further claim that the *Rosario* requirement applies to a transcript of the expert's testimony in a previous, unrelated Warren County trial, and we decline to find such a requirement in this case. The expert had testified in some 500 to 600 prior cases, and although his testimony in the trial in question apparently involved similar scientific principles, there was no direct factual nexus. Accordingly, there was no *Rosario* violation.

Defendant next contends that the two orders of protection issued against him violate CPL 530.12 (5) in that their 30-year duration exceeds eight years from the date of expiration of the maximum term of his sentence. County Court calculated the duration of the orders by adding eight years to defendant's 22-year maximum term and set the orders of protection to expire on July 18, 2037, 30 years after his sentencing date. As the People concede, the date of expiration of defendant's sentence will be affected by the time he spent incarcerated while awaiting trial, and the court failed to "tak[e] into account any jail time credit to which defendant is entitled" (*People v Holmes*, 294 AD2d 871, 872 [2002], *lv denied* 98 NY2d 730 [2002]). The matter must therefore be remitted to the court to determine the amount of jail time credit to which defendant is entitled and to specify a duration for the orders of protection eight years after the expiration of his maximum term of imprisonment (*see People v Goodband*, 291 AD2d 584, 585-586 [2002]). In addition, defendant's 22-year determinate term includes a five-year term of postrelease supervision. We have previously held that "a mandatory period of postrelease supervision imposed upon a determinate sentence is part of the sentence of imprisonment actually imposed for purposes of calculating the duration of [an] order of protection" (*People v Crowley*, 34 AD3d 866, 868 [2006], *lv denied* 7 NY3d 924 [2006] [internal quotation marks and citations omitted]). In calculating the expiration of defendant's maximum term upon remittal the five-year period of postrelease supervision should be added to his 22-year maximum term (*see People v Goodband*, 291 AD2d at 586).

With regard to the restitution award, the People concede that

County Court had previously ordered at an initial hearing that the restitution award would not exceed $705,000 based upon the People's stipulation to accept that amount. Thus, the restitution award should be modified to $705,000, with a 5% surcharge of $35,250, for a total award of $740,250.

Finally, we reject defendant's claim that his sentence is harsh and excessive as we find no abuse of discretion by the sentencing court or extraordinary circumstances that warrant intervention (*see People v Delgado*, 80 NY2d 780, 783 [1992]; *People v Rollins*, 51 AD3d 1279, 1282-1283 [2008], *lv denied* 11 NY3d 930 [2009]; *People v Strong*, 27 AD3d 1010, 1013 [2006], *lv denied* 7 NY3d 763 [2006]).

Rose, J.P., Kane, Stein and McCarthy, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by reducing the amount of restitution awarded to $705,000 with a 5% surcharge of $35,250; matter remitted to the County Court of Warren County to determine the appropriate duration of the orders of protection; and, as so modified, affirmed.