*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:   July 23, 2015                    106657
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

            v                              MEMORANDUM AND ORDER

ROBERT WILLIAMS,
                        Appellant.
_____


Calendar Date:   May 26, 2015

Before:  Lahtinen, J.P., McCarthy, Rose and Clark, JJ.

_____


        Mitch Kessler, Cohoes, for appellant.

        P. David Soares, District Attorney, Albany (Christopher D.
Horn of counsel), for respondent.

_____


Clark, J.

        Appeal from a judgment of the County Court of Albany County
(Ceresia, J.), rendered March 7, 2014, upon a verdict convicting
defendant of the crime of murder in the second degree.

        Defendant met the victim in February 2013 and considered
himself married to her according to the tenets of his faith after
a religious ceremony on March 12, 2013.  Approximately one month
later, defendant grew suspicious that the victim was cheating on
him and trying to poison him, and, on May 25, 2013, the couple
decided to separate.  On the morning of May 27, 2013, defendant
went to the victim's apartment in the City of Albany and stabbed
her to death.

        Defendant was charged with one count of murder in the

second degree and raised the affirmative defense of extreme emotional disturbance at the ensuing jury trial. Ultimately, defendant was convicted as charged and sentenced to a prison term of 25 years to life. Defendant now appeals, arguing that the jury's verdict rejecting his defense of extreme emotional disturbance is against the weight of the evidence.

"Where, as here, a different verdict would not have been unreasonable, we will weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn" therefrom to determine whether a conviction is against the weight of the evidence (People v Chancey, 127 AD3d 1409, 1410 [2015] [internal quotation marks and citations omitted]). As relevant here, a person is guilty of murder in the second degree when he or she intentionally causes the victim's death (see Penal Law § 125.25 [1]). A defendant who successfully asserts the defense of extreme emotional disturbance, however, is guilty of manslaughter and not murder (see Penal Law §§ 125.20 [2]; 125.25 [1] [a]; People v Roche, 98 NY2d 70, 75 [2002]).

To establish an extreme emotional disturbance defense, a defendant must show by a preponderance of the evidence "first, that he or she acted under the influence of an extreme emotional disturbance and, second, that there was a reasonable explanation or excuse for that disturbance" (People v Roche, 98 NY2d at 75; see Penal Law §§ 25.00 [2]; 125.25 [1] [a]; People v Chancey, 127 AD3d at 1410). The first element is established by proof that the defendant was subjectively under an extreme emotional disturbance, which usually involves a loss of self-control (see People v Cass, 18 NY3d 553, 561 [2012]; People v Pavone, 117 AD3d 1329, 1331-1332 [2014], lv granted 24 NY3d 963 [2014]). The second, objective, element is established by proof that there was a reasonable explanation for the defendant's emotional disturbance (see People v Roche, 98 NY2d at 76; People v Pavone, 117 AD3d at 1332). "[E]vidence demonstrating a defendant's high degree of self-control or the planned and deliberate character of the underlying attack, as well as any postcrime conduct suggesting that the defendant was in full command of his or her faculties and had consciousness of guilt, is entirely inconsistent with an extreme emotional disturbance defense"

(People v Pavone, 117 AD3d at 1332 [internal quotation marks, brackets, ellipses and citations omitted]).

Defendant testified that he believed that the victim was cheating on him because he saw the victim use a dating website and receive a phone call and text messages from other men. Defendant further testified that he saw pictures of male genitalia on the victim's phone, which he showed to his friend, who confirmed the existence of such pictures at trial. Defendant also suspected that the victim was trying to poison him because he became sick after eating meals that she had prepared for him, and he testified that his symptoms were so severe that, on one occasion, he went to the hospital. On cross-examination, however, defendant revealed that he has many health issues which, one could infer, may have caused his symptoms.

Approximately a week and a half before the crime, defendant began drinking "to numb [his] pain." Individuals who saw defendant in the days leading up to the crime testified that he was upset, drank heavily, failed to take his prescribed psychiatric medications and was contemplating suicide. There was also evidence that defendant had used the victim's cell phone to send nude photos of her and derogatory remarks about her to various people two to three days before the crime. The People's proof demonstrated that defendant planned to kill the victim because he stated that he intended to kill her two days before the crime and called his sister-in-law the evening before the crime to tell her that there was a "situation" and gave her the victim's name, address and date of birth "in case anything happen[ed]."

Defendant spent the evening before the crime drinking with his neighbor. He had asked his neighbor not to let him leave if he became intoxicated, but the neighbor passed out and defendant went to the store to buy more alcohol. After staying up all night drinking, defendant went to the victim's apartment in the morning while he was still intoxicated. According to defendant, he entered the apartment with his key, took off his shoes and greeted the victim, and then they talked in her bedroom while she rolled him a cigarette. However, things became heated when they began discussing defendant's suspicions. Defendant testified

that the victim initiated the violence when she reached under a towel that she was sitting on and pulled out a knife. Defendant claimed that he did not remember stabbing the victim, but when he was asked whether he had to kill the victim, he responded that he did not have a choice.

Shortly after the crime, defendant went for a walk with his neighbor, admitted to him that he had killed the victim and stated that the victim "was so evil that the blood didn't even come out." Defendant testified that he sold the victim's laptop because there "was so much evil in it" and he used the money to buy a bus ticket to New York City. He took the victim's state identification card with him to New York City, which he hid in an empty beer can.

The victim's body was found in a closet in her apartment and was covered in debris, which indicates that defendant may have tried to hide her body. One knife was found wrapped in a towel and a second knife was found inside a blanket. After the crime, defendant told his sister-in-law that "he had time" and that "they would have to find" the body. Defendant's concealment of the victim's body and knives indicates that he exercised self-control after stabbing the victim and evidences his consciousness of guilt.

We find that, in light of the foregoing evidence, a rational jury could have determined that defendant was not subjectively operating under the influence of an extreme emotional disturbance if it disbelieved his assertions as self-serving or determined that his mental state did not rise to the level of an extreme emotional disturbance (see People v Moronta, 96 AD3d 418, 420 [2012], lv denied 20 NY3d 987 [2012]). Additionally, even if we were to assume that the jury determined that defendant subjectively suffered an extreme emotional disturbance, the jury could have concluded that defendant's extreme emotional disturbance was not reasonable "so as to entitle him to a reduction of the crime charged from murder in the second degree to manslaughter" (People v Casassa, 49 NY2d 668, 679 [1980], cert denied 449 US 842 [1980]). Giving appropriate deference to the jury's ability to view the witnesses and assess their credibility, we find that the verdict rejecting

the affirmative defense of extreme emotional disturbance was not against the weight of the evidence (see People v Chancey, 127 AD3d at 1411; People v Benson, 119 AD3d 1145, 1148 [2014], lv denied 24 NY3d 1118 [2015]).

Lahtinen, J.P., McCarthy and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court