People v Agan (2022 NY Slip Op 04581)

People v Agan

2022 NY Slip Op 04581

Decided on July 14, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 14, 2022

110262
[*1]The People of the State of New York, Respondent,
v
David T. Agan Jr., Appellant.

Calendar Date:March 24, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Matthew C. Hug, Albany, for appellant, and appellant pro se.
Paul Czajka, District Attorney, Hudson (James Carlucci of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Columbia County (Koweek, J.), rendered February 15, 2018, upon a verdict convicting defendant of the crimes of murder in the first degree, rape in the third degree (15 counts), criminal sexual act in the third degree (28 counts) and incest in the third degree (92 counts).
On December 10, 2015, defendant encountered his wife (hereinafter the deceased victim) in the lobby of a medical arts facility — where they each received mental health counseling — and stabbed her to death with a screwdriver. Defendant was subsequently indicted and charged with murder in the second degree. Thereafter, the People learned, through recorded jail telephone calls and letters written by defendant to his daughter (hereinafter the minor victim), that defendant had engaged in a sexual relationship with the minor victim. In October 2016, defendant was charged in a superseding indictment with murder in the first degree, rape in the third degree (15 counts), criminal sexual act in the third degree (28 counts) and incest in the third degree (96 counts).[FN1] To elevate the charge to murder in the first degree, the People proffered the aggravating element of witness elimination, alleging that defendant killed the deceased victim to prevent her from testifying against him with respect to his sexual relationship with the minor victim. Following a jury trial — wherein defendant raised the affirmative defense of extreme emotional disturbance (hereinafter EED) — he was convicted as charged. County Court thereafter sentenced defendant to an aggregate prison sentence of a minimum term of 186&frac13; years to life and a maximum term of 389 years to life. Defendant appeals.
As an initial matter, defendant's contention that the sex offenses alleged in counts 2 through 140 of the indictment are facially duplicitous is not preserved for our review as he failed to raise this claim in his omnibus motion and did not move to dismiss the counts on this basis at trial (see People v Allen, 24 NY3d 441, 449-450 [2014]; People v Tomlinson, 53 AD3d 798, 799 [2008], lv denied 11 NY3d 835 [2008]; People v Weber, 25 AD3d 919, 922 [2006], lv denied 6 NY3d 839 [2006]).
Defendant next contends that his conviction for murder in the first degree is not supported by legally sufficient evidence and is against the weight of the evidence, as the proof elicited at trial failed to establish that the crime was a witness elimination murder. Alternatively, defendant contends that the jury's rejection of the affirmative defense of EED was against the weight of the evidence. Defendant further contends that the jury's verdict as to the sex offenses, which were alleged in counts 2 through 140 of the indictment, is not supported by legally sufficient evidence and is against the weight of the evidence.
"In assessing a challenge to the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the People to evaluate whether any valid [*2]line of reasoning and permissible inferences could satisfy every element of the charged crime[s] and lead rational people to the conclusion reached by the jury" (People v Reese, 166 AD3d 1057, 1058 [2018] [internal quotation marks and citations omitted], lv denied 33 NY3d 953 [2019]; see People v Novak, 148 AD3d 1352, 1354 [2017], lv denied 29 NY3d 1084 [2017]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Terry, 196 AD3d 840, 841 [2021] [internal quotation marks and citations omitted], lvs denied 37 NY3d 1027, 1030 [2021]; see People v Williams, 130 AD3d 1323, 1323-1324 [2015]). Because defendant made only a general objection at the close of the People's proof to dismiss the sex offenses, his legal sufficiency claims with respect thereto are unpreserved for our review (see People v Gray, 86 NY2d 10, 19-21 [1995]; People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). "In any event, when reviewing [a] defendant's weight of the evidence challenge, we ensure that the proof submitted supports the elements of the crimes" (People v McCollum, 176 AD3d 1402, 1402 [2019] [citations omitted]; see People v Baber, 182 AD3d at 795).
As relevant here, "[a] person is guilty of murder in the first degree when[,] . . . [w]ith intent to cause the death of another person, he [or she] causes the death of such person or of a third person; and . . . the intended victim was a witness to a crime committed on a prior occasion[,] and the death was caused for the purpose of preventing the intended victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced" (Penal Law § 125.27 [1] [a] [v]). "A defendant who successfully asserts the defense of extreme emotional disturbance, however, is guilty of manslaughter and not murder" (People v Williams 130 AD3d at 1324 [citations omitted]; see Penal Law §§ 125.27 [2] [a] [i]; 125.20; 25.00 [2]). "A person is guilty of rape in the third degree when[,] . . . [b]eing [21] years old or more, he or she engages in sexual intercourse with another person less than [17] years old" (Penal Law § 130.25 [2]). "A person is guilty of criminal sexual act in the third degree when[,] . . . being [21] years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than [17] years old" (Penal Law § 130.40 [2]). "A person is guilty of incest in the third degree when he or she . . . engages in sexual intercourse, oral sexual conduct or anal sexual conduct with a person whom he or she knows to be related to him or her . . . as . . .[a] descendant" (Penal Law § 255.25[*3]).
At trial, a receptionist for the Columbia County Mental Health Department, located in the medical arts facility, recalled that, shortly before the incident, defendant came into the facility inquiring whether his appointment was at 2:00 p.m. and she confirmed that it was not.[FN2] A physician and three employees at the medical arts facility testified that, at approximately 2:00 p.m. on the day of the incident, a female was calling for help. Each of the witnesses testified that he or she observed the deceased victim on the lobby floor and that defendant was stabbing her. A relative of one of the employees stated that she witnessed defendant in the medical arts facility parking lot as he was leaving the building and that he appeared casual in his demeanor, as he walked in front of her car, continued through the parking lot and down a side street. A technical sergeant and K-9 program specialist with the State Police testified that he and his canine partner responded to the medical arts facility on the day of the stabbing and that his canine alerted law enforcement to a grassy area, just off the parking lot, wherein the sergeant recovered a bloody screwdriver. A coroner's physician with expertise in forensic pathology testified that he performed the autopsy on the deceased victim and concluded that the cause of her death was blood loss from extensive stab wounds to the body — a minimum of 35 — including one that went through her jugular vein.
An investigator with the State Police testified that he reviewed all surveillance tapes, including a tape from Walmart, depicting defendant after the stabbing. The Walmart tape revealed defendant purchasing sweatpants, changing into the sweatpants in his car, and throwing out his blood-soiled jeans. This same investigator also testified that he reviewed audio recordings for outgoing calls made by defendant while in jail as well as letters written by defendant to the minor victim while he was incarcerated. Several of the calls referenced his relationship with the minor victim and the letters described, in lurid detail, its sexual nature. A second State Police investigator recalled that when defendant's cell phone was recovered from defendant's vehicle, the battery was missing. A correction officer at the Columbia County jail testified that defendant admitted to him that he had killed the deceased victim but that he did not do it on purpose, and that he had an intimate relationship with the minor victim.
The minor victim testified that she did not turn 17 until May 2014, that defendant was her biological father, that she moved to New York in December 2013 to live with defendant and the deceased victim, and that she was subjected to sexual conduct by defendant for two years beginning in January 2014. She also testified that, at one point during that period, she cohabited with defendant in a motel.[FN3] The minor victim averred that during this two-year period, she and defendant engaged in regular intercourse [*4]and oral sexual conduct three to five times per week, and that the sexual contact ceased the day that defendant stabbed the deceased victim. The minor victim confirmed that she had been contacted by the local department of social services and adult protective services inquiring if she and defendant were having sex, which she denied. The minor victim stated that she never advised anyone that defendant was subjecting her to sexual intercourse or sexual conduct. A forensic scientist testified that she performed DNA and serology analysis and confirmed that defendant was the biological father of the minor victim.
Defendant called as witnesses an urgent care physician, his primary care physician, his treating psychiatrist and an expert psychiatrist. The urgent care physician testified that, two days prior to the incident, he diagnosed defendant with anxiety and mild emotional distress, and prescribed him five .25 milligram tablets of Xanax, a benzodiazepine used to treat anxiety-related disorders. Defendant's treating psychiatrist testified that he had diagnosed defendant with posttraumatic stress disorder, intermittent explosive disorder, an unspecified mood disorder, and personality disorder not otherwise specified with antisocial features. Lastly, the expert psychiatrist agreed with these diagnoses, and further opined that defendant was suffering from an EED at the time he caused the death of the deceased victim. He based this latter conclusion on the biological impact of the Xanax that defendant had taken prior to the incident and the psychological impact of preexisting and concurrent mental illnesses as well as the social impact of being separated from his family and being removed from the marital home. In rebuttal, the People called an expert in forensic psychology who diagnosed defendant with borderline personality disorder and antisocial personality disorder and opined that defendant was not suffering from an EED at the time of the stabbing based on many contraindicative activities undertaken by defendant such as bringing a screwdriver to the medical arts facility, defendant's flight from the scene of the killing, changing his clothes, his use of humor and his discussion of sexual intercourse with the minor victim in letters, along with defendant professing his love and desire for the minor victim.
"Under New York law, witness elimination murder is committed when a defendant intentionally kills a victim who was a witness to a crime committed on a prior occasion and the death was caused for the purpose of preventing the intended victim's testimony in any criminal action" (Hoffler v Bezio, 726 F3d 144, 162-163 [2d Cir 2013] [internal quotation marks, brackets and citations omitted]. "[T]he statute is satisfied if defendant's motivation to eliminate [the deceased victim] as a witness was a substantial factor in murdering her" (People v Cahill, 2 NY3d 14, 57 [2003]). We cannot conclude that a rational trier of fact could have found defendant [*5]guilty beyond a reasonable doubt of the charge of first-degree witness elimination murder. First, the evidence did not establish that the deceased victim was an eyewitness to defendant's sex offenses with the minor victim. There was no evidence that the deceased victim observed defendant and the minor victim engage in sexual relations or sexual conduct, and the minor victim did not disclose the sex offenses to the deceased victim. At most, the deceased victim may have been a "coincidental witness" since she had suspicions of the sex offenses, but she would not have been in a position to provide "powerful, direct evidence" of defendant's criminal sexual acts (Hoffler v Bezio, 726 F3d at 163). Second, there was no evidence that defendant feared that criminal proceedings were imminent or that he was otherwise cognizant of the fact that the deceased victim might be called to testify against him. The People point to defendant's statement — in a recorded jail telephone conversation that took place with his mother after defendant was indicted on murder in the second degree — wherein he states that if the prosecution had recorded his jail telephone conversations with the minor victim after the murder (and thus become aware of the sexual relationship between them), the People would be "using murder one." In our opinion this conclusory statement does not constitute an admission to witness elimination murder. Aside from its speculative nature, there is simply no evidence in the record that defendant was even aware of the elements of murder in the first degree, let alone that he had this concern at the time of the stabbing. Viewed in the light most favorable to the People, the evidence is simply insufficient to establish a witness elimination murder (cf. People v Cahill, 2 NY3d at 59). However, as the evidence was sufficient to convict defendant of the lesser included offense of murder in the second degree, we reduce his conviction accordingly and remit to County Court (see id. at 43; People v Harris, 186 AD3d 907, 912 [2020], lv denied 36 NY3d 1120 [2021]; People v Grillo, 128 AD3d 1103, 1106 [2015]).
We next find unavailing defendant's contention that the jury's rejection of the affirmative defense of EED was against the weight of the evidence. "To establish an [EED] defense, a defendant must show by a preponderance of the evidence first, that he or she acted under the influence of an [EED] and, second, that there was a reasonable explanation or excuse for that disturbance. The first element is established by proof that the defendant was subjectively under an [EED], which usually involves a loss of self-control. The second, objective, element is established by proof that there was a reasonable explanation for the defendant's emotional disturbance" (People v Williams, 130 AD3d at 1324 [internal quotation marks and citations omitted]). "When presented with competing expert testimony with respect to a defendant's state of mind at the time he or [*6]she committed the alleged criminal activity, it is within the jury's province to credit the testimony of one expert over another and reject the affirmative defense[] of EED" (People v Reese, 166 AD3d at 1060 [citations omitted]).
Although defendant presented the testimony of a psychiatrist who opined that defendant was suffering from several mental illnesses and was suffering from an EED at the time he caused the death of the deceased victim, the People provided rebuttal testimony from a forensic psychologist who opined that defendant suffered from borderline personality disorder and antisocial personality disorder, which are disorders that can render an individual impulsive and very violent. The forensic psychologist further opined that defendant was not suffering from an EED based on his calm and calculated self-control behaviors, which included bringing the weapon to the murder scene, calmly leaving the murder scene, changing clothes and removing the battery from his cell phone. Accordingly, weighing the conflicting testimony and the strength of conflicting inferences to be drawn from the evidence, and giving deference to the jury's factual and credibility determinations, we find that the verdict rejecting the affirmative defense of EED is not against the weight of the evidence (see People v Reese, 166 AD3d at 1062; People v Williams, 130 AD3d at 1326; People v Pavone, 117 AD3d 1329, 1336 [2014], affd 26 NY3d 629 [2015]). In view of the foregoing, we modify the judgment by reducing the conviction of murder in the first degree under count one of the indictment to murder in the second degree (Penal Law § 125.25 [1]) and vacating the sentence imposed on that conviction, and we remit the matter to County Court for sentencing on the conviction of murder in the second degree (see CPL 470.15 [2] [a]; 470.20 [4]; People v Cahill, 2 NY3d at 72; People v Henry, 159 AD3d 1477, 1478-1479 [2018], lv denied 31 NY3d 1149 [2018]).
As to the sex offenses, after reviewing the proof in the record consisting of, among other things, the minor victim's testimony, the sexually graphic letters written by defendant to the minor victim, and his admission to the correction officer that he was having a relationship with the minor victim, and according deference to the jury's credibility determinations, it would be unreasonable to reach a different verdict. As such, we find that the verdict as to those crimes is not against the weight of the evidence (see People v Watkins, 180 AD3d 1222, 1230-1231 [2020], lvs denied 35 NY3d 1026, 1030 [2020]; People v Secor, 162 AD3d 1411, 1413 [2018], lv denied 32 NY3d 941 [2018]; People v Stocum, 143 AD3d 1160, 1162-1163 [2016]).
Contrary to defendant's contention, County Court properly denied defendant's motion to sever the 139 counts charging sex offenses from count 1 of the indictment charging defendant with murder in the first degree. Under CPL 200.20 (2) (b), offenses are joinable when, "[e]ven though based upon different [*7]criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the second, or proof of the second would be material and admissible as evidence in chief upon a trial of the first" (see People v Hajratalli, 200 AD3d 1332, 1336 [2021], lv denied 38 NY3d 1033 [2022]; People v Wells, 141 AD3d 1013, 1015 [2016], lvs denied 28 NY3d 1183, 1189 [2017]). Inasmuch as evidence of the sex offenses was material and relevant to the People's attempt to prove that defendant committed witness elimination murder by stabbing the deceased victim to allegedly prevent her from testifying as to the sex offenses, we find that the offenses were joinable by statute (CPL 200.20 [2] [b]), and County Court properly denied defendant's severance motion (see People v Hajratalli, 200 AD3d at 1337; People v Wells, 141 AD3d at 1016-1017; People v McCloud, 121 AD3d 1286, 1288-1289 [2014], lv denied 25 NY3d 1167 [2015]).
Defendant next asserts that certain testimony by the deceased victim's therapist, defendant's primary physician's nurse and defendant's cousin should have been excluded as inadmissible hearsay or double hearsay. We disagree. "Hearsay is an out-of-court statement admitted for the truth of the matter asserted, and the hearsay rule generally prohibits the introduction of such statements at trial" (People v Stanton, 200 AD3d 1307, 1308 [2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 954 [2022]). The statements made by these witnesses were not hearsay, as these statements were not offered for the truth of the matter asserted but, rather, to demonstrate the deceased victim's state of mind (see id. at 1309; People v Howard, 299 AD2d 647, 648 [2002], lv denied 99 NY2d 629 [2003]; People v Toland, 284 AD2d 798, 805 [2001], lv denied 96 NY2d 942 [2001]). In addition, County Court provided the jury with limiting instructions to inform the jury that the statements were not admitted for their truth (see People v Rahaman, 189 AD3d 1709, 1713 [2020], lv denied 36 NY3d 1059 [2021]; People v McCottery, 90 AD3d 1323, 1325 [2011], lv denied 19 NY3d 975 [2012]). Therefore, County Court did not err in admitting the challenged statements into evidence.
County Court properly denied defendant's request for records of the deceased victim's mental health counseling. "Although a defendant has a constitutional right to confront witnesses through cross-examination, that right is not absolute" (People v Porter, 184 AD3d 1014, 1018 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1069 [2020]). "In general, mental health records are confidential and will not be discoverable where sought as a fishing expedition searching for some means of attacking the victim's credibility" People v McCray, 102 AD3d 1000, 1005 [2013] [internal quotation marks and citations omitted], affd 23 NY3d 193 [2014]). [*8]"A trial court may impose reasonable limits on a defendant's cross-examination of a witness based on concerns" that, among other things, the examination of the witness is "only marginally relevant" (People v Gannon, 174 AD3d 1054, 1060 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 980 [2019]). As defendant sought the records to determine if the deceased victim was a reliable witness, we find no abuse of discretion in denying the records and limiting the cross-examination of the deceased victim's therapist in this regard (see People v Porter, 184 AD3d at 1018; People v Horton 181 AD3d 986, 989 [2020], lv denied 35 NY3d 1045 [2020]).
We also reject defendant's claim that County Court erred in permitting the People's rebuttal expert to testify to statements given by defendant to police without first conducting a Huntley hearing. Prior to the start of the scheduled Huntley hearing, the People and defendant stipulated that the People would not use the statements in their case-in-chief, "although sometime we may want to talk about what, if anything, those statements will have to do with the psychiatric defense." Based upon this stipulation, defendant waived his Huntley hearing and did not move to suppress the statements. As such, we will not now review the issue (see People v Paul, 202 AD3d 1203, 1208 [2022], lv denied 38 NY3d 1034 [2022]; People v Smith, 89 AD3d 1148, 1149 [2011], lv denied 19 NY3d 968 [2012]).
Finally, we find no merit in defendant's contention that he was denied effective assistance of counsel. "In order to sustain a claim of ineffective assistance of counsel, a court must consider whether defense counsel's actions at trial constituted egregious and prejudicial error such that the defendant did not receive a fair trial. A claim will fail so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Campbell, 196 AD3d 834, 838 [2021] [internal quotation marks, brackets and citations omitted], lvs denied 37 NY3d 1025 [2021]; see People v Dickinson, 182 AD3d 783, 789 [2020], lv denied 35 NY3d 1065 [2020]). As to defendant's assertions that counsel failed to move to dismiss counts 2 through 140 as duplicitous and object to the admission of defendant's statements to law enforcement after waiving the Huntley hearing, "trial counsel cannot be ineffective for failing to advance an argument that has little or no chance of success" (People v May, 188 AD3d 1309, 1311 [2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 974 [2020]; see People v Rose, 185 AD3d 1228, 1232 [2020], lv denied 35 NY3d 1115 [2020]). Regarding defendant's contention that counsel did not impeach the credibility of the minor victim and cross-examine the three eyewitnesses to the killing, "[d]efendant's criticisms of counsel must amount to more than a simple disagreement [*9]with counsel's strategies, tactics or the scope of possible cross-examination" (People v Richardson, 162 AD3d 1328, 1332 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1128 [2018]). Defendant failed to show that this was neither a strategic choice by counsel to avoid undesirable testimony, nor a tactical decision to avoid drawing further attention to the stabbing (see People v Kelsey, 174 AD3d 962, 966 [2019], lv denied 34 NY3d 982 [2019], cert denied __ US __, 141 S Ct 2607 [2021]; People v Richardson, 162 AD3d at 1332). Overall, the record reflects that defense counsel pursued a rational trial strategy, presented cogent opening and closing statements, vigorously cross-examined witnesses and presented expert and other witnesses in support of his EED defense, and defendant was therefore provided with meaningful representation (see People v Stanton, 200 AD3d at 1310-1311; People v Dickinson, 182 AD3d at 790; People v Houze, 177 AD3d 1184, 1189 [2019], lv denied 34 NY3d 1159 [2020]).
Aarons and Fisher, JJ., concur.
Egan Jr., J.P. (concurring).
I respectfully concur. The proof amply supports the finding that defendant is a vicious, cold-blooded killer who intentionally murdered the deceased victim, and the People attempted to demonstrate that the killing constituted witness elimination murder in that he killed "a victim who 'was a witness to a crime committed on a prior occasion and [did so] . . . for the purpose of preventing the intended victim's testimony in any criminal action'" (People v Cahill, 2 NY3d 14, 56 [2003] [emphasis omitted], quoting Penal Law § 125.27 [1] [a] [v]; see People v Adamson, 47 AD3d 318, 322-323 [2007], lv denied 10 NY3d 807 [2008]). The majority holds that the record lacks legally sufficient proof to support the jury's finding that either of those prongs had been met. Unlike the majority, I do perceive legally sufficient proof for the finding that the deceased victim was a witness to prior crimes, namely, those relating to defendant's sexual abuse of the minor victim. I agree with the majority, however, that similar proof does not exist for the finding that "defendant's motivation to eliminate [the deceased victim] as a witness was a substantial factor in murdering her" (People v Cahill, 2 NY3d at 57).
A witness is commonly defined as "a person who personally sees or perceives a thing or one who has knowledge of a fact or occurrence sufficient to testify with respect to it" (People v Bell, 73 NY2d 153, 164 [1989] [internal quotation marks and citations omitted]), and the proof at trial reflected that the deceased victim could have testified to her knowledge of facts relevant to, and potentially her direct observations of, defendant's prior crimes. For instance, the deceased victim's therapist testified as to how the deceased victim had concerns about the excessive physical intimacy between defendant and the minor victim and had described, among other things, how her own sexual encounters [*10]with defendant had ceased after the minor victim began living with them. Further, a nurse testified to a conversation with the deceased victim in which she recounted coming home one night to find a partially clothed defendant and minor victim in bed together, observations that would have been relevant in any effort to establish the existence of an improper sexual relationship. The deceased victim might also have been able to testify to one or more incidents of actual sexual behavior between defendant and the minor victim, as both the testimony of the minor victim and letters authored by defendant indicate that they engaged in sexual activity while the deceased victim was supposedly asleep in the same bed. In my view, the foregoing constitutes legally sufficient proof from which a jury could find that the deceased victim had relevant information to offer regarding defendant's criminal sexual relationship with the minor victim and was therefore a witness to a prior crime (see Hoffler v Bezio, 726 F3d 144, 164 [2d Cir 2013]; see e.g. People v Bell, 73 NY2d at 164).
One might expect that defendant's "motivation to eliminate [the deceased victim] as a witness was a substantial factor in murdering her," given his awareness of her suspicions about the relationship between him and the minor victim (People v Cahill, 2 NY3d at 57). As the majority notes, however, the proof presented by the People on that point gave little reason to believe that defendant killed the deceased victim because of the possibility that she could be a witness against him. To the contrary, defendant's postarrest letters to the victim reflect that he killed the deceased victim because of their deteriorating relationship and the obstacle her suspicions posed to his relationship with the minor victim. Defendant wrote his regrets that the deceased victim and the minor victim could not "accept[]" each other or "share[]" him, for example, and he blamed his actions upon the deceased victim's "shutting [him] out," her unwillingness to "properly communicate" with him and her "relentless selfishness." Thus, as the trial proof reflected that defendant wanted to kill the deceased victim "for reasons that had virtually nothing to do with her ability to testify against him[,] . . . witness elimination [was not] a substantial motive for the murder" (id. at 62).
McShan, J. (concurring).
I agree with the result set forth by the majority and further join in the concurrence of Justice Egan. I respectfully write separately to address my concern with the limitations that the majority places on the definition of a witness in the context of a witness-elimination murder.
In determining that the deceased victim was not a witness for purposes of witness elimination murder pursuant to Penal Law § 125.27 (1) (a) (v), the majority emphasizes that she was not an eyewitness to defendant's sex offenses with the minor victim and that, at best, the evidence she could have offered would have made her a[*11]"coincidental witness" (Hoffler v Bezio, 726 F3d 144, 163 [2d Cir 2013]). However, I believe that the plain language of the statute contains no indication that the killing of a witness of this caliber would prohibit the People from successfully prosecuting a defendant under a witness elimination theory.
A straightforward reading of Penal Law § 125.27 (1) (a) (v) reveals the absence of any language emphasizing the quality of testimony that a victim/witness might be able to offer beyond the qualification that the testimony he or she could have offered must pertain to a crime "committed on a prior occasion" (Penal Law § 125.27 [1] [a] [v]; see People v Adamson, 47 AD3d 318, 322-323 [2007], lv denied 10 NY3d 807 [2008]). Similarly, the Legislature provided no indication that the quality or quantity of testimony that a victim might offer is pertinent to the inquiry on whether that victim was a witness for purposes of the statute. To the contrary, the legislative history speaks more broadly to the desire for the witness elimination murder statute to encompass those killings that "threaten the integrity of the justice system and impede the ability of law enforcement authorities to prevent and punish serious crime" (Mem of Assembly Codes Comm, Bill Jacket, L 1995, ch 1, at 21; see People v Adamson, 47 AD3d at 323-324). In this respect, even those witnesses who might provide minor details of a prior crime may still be important in the prosecution of a criminal case, particularly one that is largely built upon circumstantial evidence. With that in mind, it is not difficult to envision a scenario in which a defendant is substantially motivated to eliminate a witness whose testimony might only consist of circumstantial, or even coincidental, evidence concerning a prior crime. In these situations, the quality of the testimony that a witness could have potentially provided is more appropriately analyzed in the context of the defendant's motivation to prevent such testimony from being introduced (see People v Cahill, 2 NY3d 14, 57 [2003]; see also Hoffler v Bezio, 726 F3d at 163). All told, I believe that the potential testimony that the deceased victim could have offered in this case, while falling short of "powerful, direct evidence," was still legally sufficient to establish that she was a witness as that term is understood in Penal Law § 125.27 (1) (a) (v) (Hoffler v Bezio, 726 F3d at 163).
ORDERED that the judgment is modified, on the law and the facts, by reducing defendant's conviction of murder in the first degree under count one of the indictment to murder in the second degree; vacate the sentence imposed thereon and matter remitted to the County Court of Columbia County for sentencing on said count; and, as so modified, affirmed.

Footnotes

Footnote 1: At trial, the People withdrew counts 128-131 of the indictment charging defendant with incest in the third degree.

Footnote 2: The deceased victim's psychotherapist testified that, as of the date of the incident, the deceased victim had had a standing appointment on Thursdays at 2:00 p.m. for over a year, and that defendant often accompanied her to these appointments.

Footnote 3: Defendant was removed from the marital residence based on allegations that he used corporal punishment on his oldest son. Thereafter, defendant and the minor victim lived in a motel.