People v George (2025 NY Slip Op 05994)

People v George

2025 NY Slip Op 05994

Decided on October 30, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 30, 2025

CR-23-1178
[*1]The People of the State of New York, Respondent,
v
Raymond George, Appellant.

Calendar Date:September 11, 2025

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Adam G. Parisi, Schenectady, for appellant.
Susan J. Mallery, District Attorney, Howes Caves (Bridget Rahilly Steller of New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Peter Lynch, J.), rendered November 30, 2022 in Schoharie County, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal mischief in the second degree and aggravated cruelty to animals (two counts).
On June 15, 2021, both defendant and the victim resided at the Colonial Court Motel located in the Town of Cobleskill, Schoharie County. On said date, the victim was sitting on a bench outside his motel room with his two dogs when defendant drove his SUV into the victim and his two dogs, with the vehicle coming to rest inside the victim's motel room. The victim and one dog were killed instantly, while the other dog was severely injured and subsequently euthanized. As a result of the incident, defendant was charged by indictment with murder in the second degree, two counts of manslaughter in the second degree, criminal mischief in the second degree and two counts of aggravated cruelty to animals. Following a jury trial, defendant was convicted of murder in the second degree, criminal mischief in the second degree and both counts of aggravated cruelty to animals. Thereafter, Supreme Court sentenced defendant, as a second felony offender, to concurrent prison terms of 25 years to life on the murder conviction, 3½ to 7 years on the criminal mischief conviction and one year on each of the aggravated cruelty to animals convictions. Defendant appeals.
Defendant contends that his convictions for criminal mischief in the second degree and aggravated cruelty to animals were based on legally insufficient evidence and that the verdict as to those convictions is against the weight of the evidence.[FN1] With respect to criminal mischief, defendant asserts that the People failed to prove that he acted with intent to damage the property. As to his aggravated cruelty to animal convictions, he argues that the People failed to prove his intent to kill or cause extreme physical pain to the dogs. "When considering a challenge to the legal sufficiency of the evidence, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. In contrast, a weight of the evidence review requires this Court to view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, proceed to weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Restifo, 220 AD3d 1113, 1115 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1094 [2024]; see People [*2]v Rudge, 185 AD3d 1214, 1215 [3d Dept 2020], lv denied 35 NY3d 1070 [2020]). "As to intent, it is well established that a defendant's intent may be inferred from the totality of the circumstances presented and the natural and probable consequences of his or her actions" (People v Stover, 174 AD3d 1150, 1151 [3d Dept 2019] [citations omitted], lv denied 34 NY3d 954 [2019]; see People v Calafell, 211 AD3d 1114, 1115 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]).
"A person is guilty of criminal mischief in the second degree when with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he [or she] has such right, he [or she] damages property of another person in an amount exceeding [$1,500]" (Penal Law § 145.10). "A person is guilty of aggravated cruelty to animals when, with no justifiable purpose, he or she intentionally kills or intentionally causes serious physical injury to a companion animal with aggravated cruelty" (Agriculture and Markets Law § 353-a [1]). Aggravated cruelty is defined as "conduct which: (i) is intended to cause extreme physical pain; or (ii) is done or carried out in an especially depraved or sadistic manner" (Agriculture and Markets Law § 353-a [1]). " '[C]ruelty' includes every act, omission, or neglect, whereby unjustifiable physical pain, suffering or death is caused or permitted" (Agriculture and Markets Law § 350 [2]).
At trial, a witness who resided at the motel testified that he was engaged in conversation with the victim immediately prior to the incident. The victim had his two unleashed dogs lying next to him — one in between his legs and the other lying next to the bench. He stated that defendant stormed out of his room and screamed at the victim, "I'll take my car and run it on your lap." The resident and a passerby described defendant getting into his car, backing out of his parking spot, turning the wheel to be in direct line with the victim and dogs, accelerating the vehicle very fast and striking the man and both dogs. Another witness testified that he spotted defendant immediately after the incident at the back of the victim's motel room where the foundation was pushed from the wall, muttering "I'll kill you" and "now they're coming to get me."
A State Police investigator with the collision reconstruction unit opined that defendant backed up and then moved forward "to go right where the vehicle crashed into the building" — i.e., where the dogs were lying. He further testified that at the time defendant struck the dogs, the gas pedal was fully depressed, the vehicle was traveling at 29 miles per hour and defendant never touched the brake. Lastly, the investigator ruled out any mechanical, environmental or parking lot defects which could have contributed to the cause of the crash.
An emergency medical technician testified that she was familiar with the dog that was lying aside the bench, and that when she arrived on the scene the dog appeared [*3]to be distressed and was panting. She stated that the dog's right front paw was deformed, obviously injured, had an open wound with "fresh blood" and that the dog could not get up. The technician transported the dog to a local veterinarian. The veterinarian who treated the dog testified that, when brought to the facility, the dog was in shock, causing the veterinarian to immediately start her on IV fluids and administer hydromorphone for pain. The veterinarian determined that the dog had a fractured pelvis and a fractured right front leg, distal radius and ulna. She explained that dogs have many nerve endings in their bones and when a bone is fractured it is extremely painful to the dog. Based on the expression and the behavior of the dog, the veterinarian determined that the dog was in extreme pain and was suffering, and the decision was made to euthanize her. The People submitted photographs depicting the other dog lying dead amidst the rubble of the car and the destroyed motel room. The operator of the motel testified that defendant did not have permission to damage the motel and the People submitted the motel's insurance company adjuster's estimate for repair costs exceeding $150,000.
Defendant testified that on the day of the incident he had taken a significant amount of medication, including Cymbalta, Gabapentin, Baclofen and Tylenol. Shortly before the incident, he was in his room smoking marihuana in an effort to relieve a migraine. Defendant testified that he has no recollection of the incident itself — including getting into his vehicle and driving into the building. He stated that his first memories after the incident are of his being near the Super 8 hotel trembling and sweating; shortly thereafter he was stopped by the police. Defendant stated that the police did not subject him to a breathalyzer test nor draw blood from him. When counsel asked defendant if he got along with the dogs, he responded, "Yes. I'm truly sorry, nothing done intentional." He further testified that he did not intend to kill or harm anyone.
Contrary to defendant's claim, the proof of his intent was legally sufficient to support the criminal mischief and aggravated cruelty to animals convictions as "[i]ntent may be inferred from the act itself, from a defendant's conduct and statements, and from the surrounding circumstances" (People v Hodges, 66 AD3d 1228, 1230 [3d Dept 2009], lv denied 13 NY3d 939 [2010]). As relevant to the criminal mischief conviction, the evidence, when viewed in the light most favorable to the People, demonstrates that defendant drove his vehicle — which did not have any mechanical defects — into the motel with the gas pedal fully depressed and without employing his brakes. Thus, the evidence provides a valid inference that could lead a rational person to the conclusion that defendant intended to damage the building (see People v Misevis, 76 NY2d 777, 779 [1990]; People v Hodges, 66 AD3d at 1231). As to the aggravated cruelty to animals [*4]convictions, although defendant testified that he did not intend to hurt the dogs, the testimony, along with the pictures of the deceased dog, support the conclusion that defendant, who aimed his car directly at the dogs — lying next to their owner — while reaching a speed of 29 miles per hour, caused the dogs extreme physical pain and death, thus constituting aggravated cruelty (see Agriculture and Markets Law §§ 350 [2]; 353-a [1]; People v Brinkley, 174 AD3d 1159, 1162 [3d Dept 2019], lv denied 34 NY3d 979 [2019]; People v Facey, 127 AD3d 1256, 1257 [3d Dept 2015]).
Although an acquittal on these counts would not have been unreasonable had the jury believed defendant's contention that he had no intention of damaging the building or harming or killing the dogs, the jury was free to reject defendant's self-serving testimony and we accord deference to that assessment of credibility. Accordingly, the convictions are not against the weight of the evidence (see People v Brinkley, 174 AD3d at 1162; People v Napoli, 167 AD3d 1080, 1081 [3d Dept 2018]; People v Young, 160 AD3d 1206, 1208 [3d Dept 2018], lv denied 31 NY3d 1155 [2018]; People v Hodges, 66 AD3d at 1231).
Next, defendant asserts that he did not receive effective assistance of counsel based on counsel's argument that the incident was an accident and his failure to pursue the defense of extreme emotional disturbance (see Penal Law § 125.25 [1] [a] [i]). "It is well established that a claim of ineffective assistance of counsel must fail if the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Malloy, 228 AD3d 1068, 1071 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 971 [2024]; accord People v Rivera, 212 AD3d 942, 948 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]). "To prevail, the defendant must demonstrate the absence of strategic or other legitimate explanations — i.e., those that would be consistent with the decisions of a reasonably competent attorney — for the alleged deficiencies of counsel" (People v Wilcox, 231 AD3d 1350, 1351 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Burton, 215 AD3d 1054, 1061-1062 [3d Dept 2023], lv denied 40 NY3d 927 [2023]).
Here, counsel was representing a defendant with a copious criminal record that included convictions for rape and manslaughter,[FN2] and a conviction after trial would more than likely result in a lengthy sentence for the middle-aged defendant. A defense of extreme emotional disturbance necessitates defendant's admission to the homicidal act, and the resultant conviction of manslaughter (see People v Agan, 207 AD3d 861, 863 [3d Dept 2022], lvs denied 38 NY3d 1186 [2022], 39 NY3d 939 [2022]). At trial, the People presented evidence that it was not uncommon for the victim and defendant to engage in spats, and that defendant had previously [*5]threatened the victim, but that these previous encounters had always remained purely verbal. Although, in support of his argument that defense counsel should have employed an extreme emotional disturbance defense, defendant references the Huntley hearing evidence wherein he told his parole officer two days after the attack that the victim regularly tormented or picked on him, defendant fails to include his other statement offered at the hearing, namely, that the victim "got what he deserved." Furthermore, the evidence shows that defendant deliberately orchestrated the attack, that defendant was calm during and after the incident, and at the time he was taken into custody was in full control of his faculties as he invoked his right to counsel rather than provide any statements to the police. "Evidence demonstrating a defendant's high degree of self-control or the planned and deliberate character of the underlying attack, as well as any postcrime conduct suggesting that the defendant was in full command of his or her faculties and had consciousness of guilt, is entirely inconsistent with an extreme emotional disturbance defense" (People v Williams, 130 AD3d 1323, 1324 [3d Dept 2015] [internal quotation marks, brackets and citations omitted]; see People v Pascarella, 172 AD3d 1533, 1536 [3d Dept 2019], lv denied 34 NY3d 935 [2019]). As such, there is scant evidence supporting the defense of extreme emotional disturbance.
Defendant further argues that counsel's defense theory suggesting that the incident was an accident was not plausible. Given defendant's testimony regarding the medication and marihuana he ingested shortly before the incident, and that he could not remember getting into and driving the vehicle, it was reasonable for counsel to seek a defense in hopes of securing a complete acquittal, namely an accident, rather than the guaranteed prison sentence attendant to a conviction for manslaughter based on the extreme emotional disturbance defense. The record supports counsel having made a deliberate and calculated decision to challenge the People's proof regarding defendant's intent, which was a legitimate trial strategy (see People v Cayea, 163 AD3d 1279, 1282 [3d Dept 2018], lv denied 32 NY3d 1109 [2018]). "Moreover, defendant has not established the absence of any legitimate explanation for pursuing the chosen trial strategy and counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective" (People v Lubrano, 117 AD3d 1239, 1242 [3d Dept 2014] [internal quotation marks and citations omitted], lv denied 25 NY3d 990 [2015]; see People v Underdue, 89 AD3d 1132, 1134 [3d Dept 2011], lv denied 19 NY3d 969[2012]). Our review of the record in its totality, including defense counsel's extensive cross-examination of the People's witnesses, making appropriate motions and objections throughout the trial, and pursuit of a plausible strategy, establishes that defendant received [*6]meaningful representation (see People v Cayea, 163 AD3d at 1282; People v Lubrano, 117 AD3d at 1242; People v Underdue, 89 AD3d at 1134).
Finally, with regard to defendant's sentence, we are unpersuaded that it is unduly harsh or severe. Although defendant's sentence is the maximum permissible prison term for his conviction for murder in the second degree (see Penal Law §§ 70.00 [2] [a]; [3] [a] [i]; 125.25), upon considering, among other factors, defendant's extensive criminal history and his lack of remorse, we decline to disturb his sentence (see CPL 470.15 [6] [b]; People v Pica-Torres, 230 AD3d 855, 863 [3d Dept 2024], lv denied 42 NY3d 1054 [2024]; People v Burton, 215 AD3d at 1064).
Clark, J.P., Pritzker, McShan and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant does not challenge the legal sufficiency or weight of the evidence with respect to his conviction for murder in the second degree.

Footnote 2: Defendant's previous murder in the second degree conviction was reduced from murder to manslaughter in the second degree due to a change in the law with reference to the depraved indifference standard.