People v Appiah (2023 NY Slip Op 03955)

People v Appiah

2023 NY Slip Op 03955

Decided on July 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 27, 2023

113512
[*1]The People of the State of New York, Respondent,
v
Kwabena Appiah, Appellant.

Calendar Date:May 26, 2023

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and McShan, JJ,

Steven M. Sharp, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Schenectady County (Mark J. Caruso, J.), rendered January 28, 2022, convicting defendant upon his plea of guilty of the crime of assault in the second degree.
In December 2019, defendant drove his vehicle into an oncoming vehicle causing a head-on collision that seriously injured the other driver (hereinafter the victim). In satisfaction of a three-count indictment charging defendant with assault in the first degree and other crimes handed up in connection with that incident, defendant pleaded guilty to assault in the second degree as charged in the second count. Pursuant to the plea agreement, which required a waiver of appeal, defendant signed a written waiver of appeal and, in exchange, was promised a prison sentence of seven years, to be followed by a period of postrelease supervision (hereinafter PRS) of between 1½ and 3 years. Consistent with that agreement, County Court sentenced defendant to a seven-year prison term to be followed by two years of PRS. Defendant appeals.

Initially, although it is a close call, we agree with defendant that his waiver of appeal is not valid. The written appeal waiver executed by defendant during the plea allocution is overly broad in several respects, as it purported to create an absolute bar to a direct appeal by indicating that the appeal waiver "mark[s] the end of [his] case" and precludes him from pursuing collateral relief "in any state or federal court" (see People v Bisono, 36 NY3d 1013, 1017-1018 [2020]; People v Thomas, 34 NY3d 545, 565-566 [2019]). Although County Court's brief oral allocution [FN1] advised defendant that certain appellate rights survive the waiver, this was not sufficient to cure the defects in the written waiver (see People v Ward, 204 AD3d 1172, 1173 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]) and did not establish that he understood that some collateral and federal review survives the waiver (see People v Devane, 212 AD3d 894, 896 [3d Dept 2023], lv denied 39 NY3d 1110 [2023]; People v Katoom, 205 AD3d 1132, 1133 [3d Dept 2022]). Consequently, defendant did not knowingly, intelligently and voluntarily waive the right to appeal (see People v Thomas, 34 NY3d at 560).
As the waiver of appeal is invalid, defendant is not precluded from challenging the severity of his sentence (see People v Coler, 214 AD3d 1207, 1208 [3d Dept 2023]). Although County Court imposed the maximum prison sentence upon defendant's guilty plea to assault in the second degree, a class D violent felony (see Penal Law § 70.02 [1] [c]; [2] [b]; [3] [c]), the maximum period of postrelease supervision was not imposed (see Penal Law § 70.45 [2] [e]) and the plea agreement allowed defendant to avoid a potential 25-year prison sentence on the top count of the indictment (see Penal Law § 70.02 [1] [a]; [3] [a]). Despite the mitigating factors considered by County Court, such as defendant's background, lack of criminal history, expressions of remorse and mental health issues [*2]that may have contributed to his actions, we cannot disregard the gravity of his conduct. Defendant purposefully used his car to cause a head-on collision with another vehicle, seriously injuring the victim; fortunately, his conduct did not kill the victim, other drivers or pedestrians around them. That defendant may have been experiencing a mental health crisis does not excuse his decision to deliberately crash his car into that of the victim, whose injuries we should not minimize, especially in light of the fact that the court did not order defendant to pay her any restitution.[FN2] Under these circumstances, the record fails to establish that the agreed-upon sentence imposed was "unduly harsh or severe" (CPL 470.15 [6] [b]).
We decline to invoke this Court's interest of justice jurisdiction to reduce defendant's sentence, as this was a fair, negotiated plea deal that defendant was entitled to accept or reject (see People v Williams, 202 AD3d 1162, 1164 [3d Dept 2022], lv denied 38 NY3d 954 [2022]; People v Johnson, 182 AD2d 922, 922 [3d Dept 1992], lv denied 80 NY2d 833 [1992]). If defendant believed that he was not in his right mind at the time of the offense, he could have proffered the affirmative defense of mental disease or defect (see Penal Law § 40.15) or sought a plea to avoid criminal responsibility (see CPL 220.15) and accepted the consequences resulting from such a decision (see CPL 330.20). Defendant did neither. Although this Court is authorized to substitute its judgment for County Court's to reduce defendant's bargained-for sentence (see People v Delgado, 80 NY2d 780, 780 [1992]; People v Baldwin, 39 NY3d 1097, 1098 [2023, Wilson, J., concurring]), under the circumstances of this case, we decline to do so (see People v Nadal-Sanchez, 215 AD3d 1140, 1140-1141 [3d Dept 2023]; People v Adorno, 210 AD3d 113, 128 [2d Dept 2022]). Accordingly, the agreed-upon sentence should stand.
Reynolds Fitzgerald, J., concurs.
Lynch, J. (concurring). I respectfully concur. During the plea colloquy, County Court expressly stated: "there[ ] [are] certain [a]ppellate rights that you never give up. You can preserve those [a]ppellate rights that you never give up by you or your attorney filing a notice of appeal within [30] days" from sentencing. The court then instructed defendant to review the two-page waiver of appeal with counsel. Defendant's counsel, in turn, responded that he had already reviewed the waiver with defendant, which defendant signed in counsel's presence. Upon inquiry by the court, defendant confirmed that he had signed the waiver, that counsel answered any questions he had about the waiver and that he wanted the court to accept the waiver.
The written waiver explained that defendant was "[giving] up the right to have the appellate court consider most claims of error and to challenge the potential excessiveness of the sentence. Among the limited number of claims that will survive the waiver of the right to appeal are: the voluntariness [*3]of this plea, the validity and voluntariness of this waiver, the legality of the sentence, the jurisdiction of this court, [defendant's] competency to stand trial, and [his] constitutional right to a speedy trial." In the concluding paragraph, the waiver stated that "by waiving my right to appeal, the plea of guilty and sentence will mark the end of my case." At sentencing, County Court concluded by inquiring of defendant's counsel whether a notice of appeal would be filed, and counsel confirmed that it would.
Considering the totality of the circumstances outlined above, it is my view that the waiver of appeal is valid. Both the plea colloquy and written waiver expressly provide that certain appellate rights survived the appeal waiver. To the extent that the "mark the end of my case" language in the written waiver indicated an absolute bar to appellate review — notwithstanding the prior language expressly enumerating the appellate rights that survived — the oral colloquy adequately cured any ambiguity in this regard (see People v Thomas, 34 NY3d 545, 563 [2019] [explaining that the court's oral colloquy "can cure incorrect language in the written waiver form"]). Notably, defendant does not assert that the appeal waiver purported to be an absolute bar to his taking a first-tier direct appeal (see People v Bisono, 36 NY3d 1013, 1017 [2020]). Instead, defendant argues that the waiver "left the impression that the waiver was an absolute bar to collateral relief." The written waiver does state that defendant was waiving "the right to appeal from any other matters . . . that I may collaterally attack in any state or federal court." That statement, however, does not mean "that the waiver encompassed 'collateral relief on certain nonwaivable issues in both state and federal courts' " (People v Bisono, 36 NY3d at 1017-1018, quoting People v Thomas, 34 NY3d at 566). That is particularly so here, given County Court's admonition that there are certain appellate rights "you never give up." Nor does the "mark the end of my case" language obviate the verbal and written confirmation that the right to appeal certain nonwaivable issues survived the waiver.
Our recent decision in People v Witherspoon (210 AD3d 1145 [3d Dept 2022], lv denied 39 NY3d 1076 [2023]) does not compel a different result. While the same written waiver was used in both cases, during the plea colloquy in Witherspoon the court "did not clarify that some appellate rights survive the waiver of appeal and stated 'that once we go to sentence and wrap this up that you are not going to try to appeal it' " (id. at 1146). Unlike the colloquy here, that is the language of an absolute bar to a first-tier direct appeal. Since the appeal waiver is valid, defendant is precluded from challenging the severity of the sentence and the judgment should be affirmed.[FN3]
McShan, J. (dissenting). Initially, we concur with the opinion of Justice Clark to the extent that it concludes that defendant's waiver of the [*4]right to appeal is invalid. The written appeal waiver executed by defendant during the plea allocution "contain[s] contradictory statements as to the surviving appellate rights" (People v Witherspoon, 210 AD3d 1145, 1146 [3d Dept 2022], lv denied 39 NY3d 1076 [2023]), including erroneously purporting to erect an absolute bar to a direct appeal by indicating that the appeal waiver "mark[s] the end of [his] case" and further language that supposedly precluded him from pursuing collateral relief "in any state or federal court" (see People v Bisono, 36 NY3d 1013, 1017-1018 [2020]; People v Thomas, 34 NY3d 545, 565-566 [2019]). Though the waiver contained language suggesting that certain appellate rights survived, and defendant's brief presents his confusion specific to the waiver of collateral proceedings, in assessing whether a written waiver is sufficient, "[t]he waiver[ ] cannot be upheld . . . [under] the theory that the offending language can be ignored," as it would be tantamount to finding the waiver partially valid and would leave this Court to surmise whether defendant comprehended the import of the conflicting statements (People v Thomas, 34 NY3d at 566; see People v Barrales, 179 AD3d 1313, 1314-1315 [3d Dept 2020]; see also People v Anderson, 210 AD3d 1464, 1464 [4th Dept 2022]). While County Court briefly noted in its oral colloquy that certain appellate rights survive the waiver (see People v Ward, 204 AD3d 1172, 1173 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]), it did not directly address the conflicting language to ensure that defendant understood that some collateral and federal review survives (see People v Devane, 212 AD3d 894, 895 [3d Dept 2023], lv denied 39 NY3d 1110 [2023]; People v Katoom, 205 AD3d 1132, 1133 [3d Dept 2022]). Altogether, we find that the terse statement from the court that there are "certain appeal rights you never give up" is insufficient to establish that this particular defendant knowingly, intelligently and voluntarily waived his right to appeal (see People v Thomas, 34 NY3d at 560; People v Moore, 201 AD3d 1209, 1210 [3d Dept 2022]).[FN4]
However, we depart from our colleagues' assessment that this case does not warrant this Court's invocation of its interest of justice jurisdiction and an appropriate reduction to defendant's sentence. At the outset, we are mindful that County Court's determination to sentence defendant in accordance with the terms of his plea agreement was legal and not an abuse of discretion, and that sentences imposed under these circumstances should not be overturned lightly (see generally People v Brown, 213 AD3d 1035, 1036 [3d Dept 2023], lv denied 39 NY3d 1153 [2023]). Nevertheless, this Court's interest of justice jurisdiction permits modification of a sentence even when that sentence was the result of a negotiated plea and fell within the permissible sentencing range (see CPL 470.15 [6] [b]; People v Ba, 39 NY3d 1130, 1132 [2023] [Troutman, J., concurring]; People v Baldwin, 39 NY3d [*5]1097, 1098 [2023] [Wilson, J., concurring]), and it is our view that the record before us militates in favor of exercising that authority.
As evidenced in the presentence investigation report, responding officers encountered an "agitated" and "disturbed" defendant at the scene, and a witness to the accident suggested that defendant had undertaken his actions in an effort to end his own life. Defendant manifested his suicidal intent after the accident by asking the officers to shoot him in the chest and lunging at them. Further, while undergoing treatment for his injuries at the hospital, defendant indicated that he had heard the "voice of God" and that he "just wanted to end the pain." In reporting the circumstances of his crime to the investigating probation officer, defendant noted that he suffered from bipolar disorder, which he had treated with prescribed medication for a number of years. However, defendant also noted that his medication was no longer effective and that in the months preceding the incident he was experiencing manic episodes. This all led to suicidal ideations manifesting on the day defendant committed this offense, which defendant suggested was brought on by "an extreme mental health breakdown." Consistent with that account, the record contains a letter submitted at sentencing from defendant's mother, a board-certified internal medicine physician, who noted that she had been in contact with defendant on the day of the incident and lamented that she had not recognized the signs that defendant was suffering a manic episode. She further recounted how defendant's past mental health issues had derailed his promising education and that defendant had previously tried several medications to address those conditions, to no avail. Defendant's mother further advised, however, that defendant's current medication as of the time of sentencing appeared to be working to control his condition.
In assessing whether to exercise our interest of justice jurisdiction under these particular circumstances, we are cognizant of the lessons of the past and the long and painful history in this state of incarcerating individuals suffering from various mental health afflictions, which has served society no better than the ineffective reliance on institutionalized treatment that was abandoned in the 1960s (see generally Patricia Warth, Unjust Punishment: The Impact of Incarceration on Mental Health, 95 NY St BJ 12 [Jan./Feb. 2023]; Stefen R. Short, Grassroots Challenges to the Effects of Prison Sprawl on Mental Health Services for Incarcerated People, 45 Fordham Urb LJ 437, 443 [2018]). To this point, it is evident that defendant's criminal conduct was not borne of a malicious intent nor of a conscious choice to act with reckless disregard for the lives of others; rather, the entirety of his conduct appears attributable to his profound mental illness, which was no longer adequately controlled at the time of the incident and casts serious doubt on the level [*6]of his culpability.[FN5] Moreover, the record reveals that, at the time of the incident, defendant was 26 years of age, had no history of prior unlawful conduct and had been a productive member of society, as demonstrated by, among other things, his participation in a reserve officer training corps program while attending college (see People v Tesar, 65 AD3d 716, 717-718 [3d Dept 2009]; People v Board, 97 AD2d 610, 610 [3d Dept 1983]; see also People v Hajratalli, 200 AD3d 1332, 1339-1340 [3d Dept 2021], lv denied 38 NY3d 1033 [2022]). Under these circumstances, we find that the societal benefits of deterrence and punishment achieved through a seven-year term of imprisonment, which is the maximum legal sentence for his conviction, are minimal and, more importantly, they are far outweighed by the rehabilitative considerations that support reducing this specific defendant's sentence (see People v Wyrick, 154 AD3d 1181, 1182 [3d Dept 2017]; People v Reyes, 89 AD3d 401, 403 [1st Dept 2011]; People v Whiting, 89 AD2d 694, 695 [3d Dept 1982]; see generally People v Watt, 189 AD3d 637, 640-641 [1st Dept 2020]).
Our opinion on this matter is by no means intended to diminish the impact on the victim in this case, who noted the serious injuries she suffered resulting from defendant's criminal conduct. However, in our view, the victim is no better served by the imposition of a lengthy criminal sentence, as defendant has expressed sincere remorse for his actions and County Court noted its appreciation for defendant's acceptance of responsibility and his genuine concern for the victim. For these reasons, we believe the specific circumstances of this case warrant a reduction to defendant's sentence in the interest of justice (see People v Hajratalli, 200 AD3d at 1332; People v Swift, 195 AD3d 1496, 1499 [4th Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Gillie, 185 AD3d 1539, 1542 [4th Dept 2020], lv denied 35 NY3d 1094 [2020]; People v Persen, 185 AD3d 1288, 1295-1296 [3d Dept 2020], lv denied 36 NY3d 1099 [2021]).
Garry, P.J., concurs.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We remind County Court that the best practice would be to follow the model colloquy that can be found on the NYS Unified Court System's intranet, which sets forth the appropriate standard and provides suggested language to be utilized when engaging in the oral allocution (https://www.nycourts.gov/judges/cji/8-Colloquies/Waiver_of_Right_to_Appeal.docx). Additionally, the Schenectady County District Attorney's office should amend its written waiver of appeal to bring it into compliance with judicial precedent.

Footnote 2: Defendant was only ordered to pay restitution to the Town of Rotterdam, Schenectady County, for fees associated with his dog, who was in defendant's vehicle at the time of the crash.

Footnote 3: That said, I fully agree with Justice Clark's reminder that the best practice would be to utilize the model colloquy.

Footnote 4: To this point, the fact that defendant expressed his intent to immediately pursue an appeal reflects that defendant had not fully comprehended the consequences of the waiver (see generally People v Bisono, 36 NY3d at 1018; People v Nisby, 207 AD3d 876, 876 [3d Dept 2022], lv denied38 NY3d 1189 [2022]).

Footnote 5: While our colleagues accurately note that it was defendant's knowing and willful choice to plead guilty despite the availability of potential defenses predicated on his mental disease or defect, that decision must be considered in the context of the charges he was facing at the time of his plea. In this respect, it is fairly evident that the severity of the top charge on the indictment, and the potential 25-year sentence that defendant faced, factored into his determination as to the prudence of risking a trial and potential guilty verdict, regardless of the potential merits of his defense. Unlike other matters in which a class B felony charge did not hang over the defendant's head (compare People v Cole, 177 AD3d 1096, 1097 [3d Dept 2019], lv denied 34 NY3d 1015 [2019]), here, the risk/reward calculus was significantly different.